CLARENCE P. MONTGOMERY *v.* STATE COMPENSATION COMMISSIONER

(No. 8075)

Submitted January 9, 1935. Decided February 5, 1935.

*Wm. P. Lehman* and *Harry E. Watkins,* for appellant.

KENNA, JUDGE:

On October 4, 1933, C. P. Montgomery, age 54, left his working place as a coal loader in the mines of Rachel Gas

Coal Company at about one-thirty in the afternoon. Between that hour and two-thirty or three o'clock in the afternoon he was seen inside the mine by several fellow-workmen, to some of whom he talked. The testimony of these men does not contribute materially to a solution of the question presented here, and the utmost weight that can be given it is to say that it throws some doubt upon the question of Montgomery being in a normal state of mind at the time that they saw him. It appears that at the time that Montgomery left his working place he intended to go to a supply shanty inside the mine where he hoped to see the mine foreman, and from him to get directions as to where he should work on the following day. He reached this shanty and found no one there. He thereupon started to the bottom of the shaft along an entry on which the shanty was. He had trouble with his light and was making his way along the entry in the dark, being guided by the track that ran to the bottom of the shaft. As he was going along in this manner, he heard the approach of an incoming motor trip and stepped back into what he thought was a ''manhole'' or offset in the wall of the entry intended to permit persons walking along the entry to step off the track and out of the way of the motor. The trip, a train of some length, passed, and, in attempting to get back into the entry and resume his way to the bottom of the shaft, Montgomery became confused. What he had supposed to be a ''manhole'' turned out to be a ''cross-cut'' between the air shaft and the entry. In his confusion, Montgomery became turned around and instead of finding his way back into the entry, went in the wrong direction and got into the air passage. He seems to have totally lost his sense of direction with the result that he was lost in the mine for a period of seven days, or until October 11, 1933, when he was found by a searching party. In the meantime, he had been without food, had wandered through the mine seeking his way out, had waded through water, some of it probably up to his neck, and had suffered from shock and exhaustion. There seems to be no question but that for several weeks after his experience, he was unable to return to work as a consequence of it, and there is some proof tending to show that even now

he is not in condition to resume his employment. However, it is likely that the question of degree of disability was not fully developed before the commissioner nor considered by him for the reason that compensation was denied because the disability complained of was found by the commissioner to be not due to an injury received in the course of and resulting from the claimant's employment. It is from this order of the commissioner that claimant appeals, and the sole question for decision is whether, admitting that claimant received some degree of disability, temporary or permanent, from his experience, that disability originated in an injury received in the course of and resulting from claimant's employment.

We are not referred to, nor have we been able to find, any decided cases that are of direct assistance even by way of analogy in reaching a conclusion on the question thus presented. We must determine, so far as our investigation of the question shows as a matter of first impression, whether there is sufficient causal connection between claimant's employment and the condition in which he found himself after his experience in the mine to render that condition compensable.

It is settled law in West Virginia that under the Workmen's Compensation Act disease, whether occupational or not, is not a personal injury within the meaning of Code, 23-4-1, and is not compensable, unless it is attributable to a specific and definite event arising in the course of and resulting from the employment. It is equally well settled in West Virginia that disease that is attributable to a specific and definite event arising in the course of and resulting from the employment, is compensable. *Conley* v. *Compensation Commissioner,* 107 W. Va. 546, 149 S. E. 666; *Archibald* v. *Compensation Commissioner,* 77 W. Va. 448, 87 S. E. 791, L. R. A. 1916D, 1013; *Lockhart* v. *Compensation Commissioner,* 115 W. Va. 144, 174 S. E. 780; *Jones* v. *Rhinehart & Dennis,* 113 W. Va. 414, 420, 423, 168 S. E. 482. On the basis of these decisions, it is clear that the term ''personal injury'' as used in the Workmen's Compensation Act of this state contemplates and includes the result of unusual exposure, shock, exhaustion, and other conditions not of traumatic origin provided that they are attrib-

utable to a specific and definite event arising in the course of and resulting from the employment. We think therefore that the condition in which Montgomery found himself as a consequence of getting lost in the mine is an injury within the meaning of the Compensation Act inasmuch as it is attributable to a specific and definite event.

The remaining query seems to be whether claimant's getting lost in the coal mine, under the conditions existing in this case, is an event arising in the course of and resulting from the claimant's employment as a coal loader in the mine. At the time he became lost, he was not actually pursuing his occupation as a coal loader, it is true. He was leaving his work, but he was on the premises of the employer and was most certainly within the zone of that work within the contemplation of the contract of employment. *Canoy* v. *Compensation Commissioner,* 113 W. Va. 914, 170 S. E. 184; *Hager* v. *Compensation Commissioner,* 112 W. Va. 492, 165 S. E. 668. We therefore conclude that the happening was "in the course of" the employment. Did it "result from" the employment? It would seem that it is upon this element of recovery that we encounter the main opposition of the employer. There is evidence having some tendency to show that Montgomery's mind was deranged at the time he became lost or, perhaps, that his getting lost was in consequence of his own deliberate purpose, and it is urged that either of these conditions would inject an element that would prevent the fact of his being lost from being within the contemplation of his contract of employment by reason of a factor in the chain causation that was not and could not have been contemplated. Of course, if the injury were self-inflicted by reason of a purpose on the part of claimant to bring it about, it would not be compensable. It is not necessary for us in this case to comment upon what the effect of sudden insanity on the part of the claimant during the time that he was actually engaged in his work might be, for the reason that, in our opinion, the proof, which does nothing more than indicate a purpose to develop this falls far short of achieving that object. We think, for the purpose of this record, that the claimant must be treated as having been in normal mental condition and as not having

intended deliberately to bring about his injury. It may be said, of course, that the claimant has not given a plausible explanation of the predicament in which he became involved. We do not think it was necessary for him to do so. In the very nature of the thing itself, the fact of getting lost is usually the result of confusion, and, being so, is not susceptible of any very clear explanation. The plat of the mine from which the witnesses evidently testified is not before us. But it would seem that the likelihood of workmen, under certain conditions, losing their way in the labyrinthian workings of the average coal mine, upon the possible failure of the lighting system or of their own individual lights or from other cause, is a situation that would, almost of necessity, be contemplated by employer and employee alike.

Painstaking effort has been used to get assistance on the questions involved in this case from decided cases in this and other jurisdictions. So far as we are able to judge from our research, the question is one of first impression in this country. We believe that it is correctly solved by the use of the cardinal principles herein applied.

Believing that the nature of the injury, the fact that it arose during the course of the employment and the fact that it occurred as a result of the employment have all been sufficiently established to entitle claimant to an award of compensation, the order of the commissioner refusing compensation is reversed and the case remanded for the finding of a suitable award, and for further development as to the degree of disability should that course be deemed advisable.

*Reversed.*