## CARTER *v.* GENERAL MOTORS CORPORATION.

1. WORKMEN'S COMPENSATION—PARANOID SCHIZOPHRENIA.

   Workmen's compensation benefits are payable for incapacity to work because of an employee's paranoid schizophrenia arising out of and in the course of employment, and while the disability arose from conditions not unusual as to fellow employees, the employment situation did aggravate a pre-existing condition.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 6]  58 Am Jur, Workmen's Compensation § 250.
   Workmen's compensation—mental state or nervous condition following accident or injury as compensable, or factor in determining amount or duration of period of compensation.  86 ALR 961.
[2]  58 Am Jur, Workmen's Compensation § 198.
[3]  58 Am Jur, Workmen's Compensation § 482.
[4]  58 Am Jur, Workmen's Compensation § 532.
[5]  58 Am Jur, Workmen's Compensation § 534.
[7]  58 Am Jur, Workmen's Compensation § 197.
[8]  58 Am Jur, Workmen's Compensation § 461.
[9]  58 Am Jur, Workmen's Compensation § 283.
[10]  58 Am Jur, Workmen's Compensation § 543.

2. SAME—PARANOID SCHIZOPHRENIA—PROXIMATE CAUSE—EMOTIONAL PRESSURES.

An employee's paranoid schizophrenia which resulted from emotional pressures encountered by him daily in the performance of his work arising from his inability to maintain the established production rate of assembly line activity in the manner prescribed constituted a compensable psychosis.

3. SAME—DECISION OF APPEAL BOARD.

A decision of the majority of the 3-member workmen's compensation appeal board is within the statutory mandate that the "decision of a majority of the board shall be the decision of the board", where one member made an award to plaintiff on the ground he was entitled thereto under one part of the workmen's compensation act, another member under another part of the act, and third member denied relief altogether (CLS 1956, § 408.11).

4. SAME—PROXIMATE CAUSE—COMPENSABLE DISABILITY.

The Supreme Court will not uphold the decision of the workmen's compensation appeal board awarding any compensation unless satisfied that there is competent evidence to uphold the board's finding of causal connection made by a majority of the board and that the plaintiff suffered a disability compensable under the act (CL 1948, § 413.12).

5. SAME — ASSEMBLY LINE WORKER — PARANOID SCHIZOPHRENIA — PROXIMATE CAUSE — FINDING OF APPEAL BOARD — EVIDENCE.

Plaintiff assembly line employee held, to have established a basis for a finding of causal connection between his employment and total disability due to paranoid schizophrenia by expert opinion of his treating physician, a specialist in the field of psychiatry, a factual determination binding upon the Supreme Court since there was competent evidence to support it (CL 1948, § 413.12).

6. SAME—MENTAL INJURY.

An employee who is unable to work because of a mental injury caused by his employment is not to be treated differently, so far as workmen's compensation benefits are concerned, than a worker disabled because of a physical injury caused by his employment.

7. SAME—PERSONAL INJURY—SINGLE EVENT.

It is unnecessary to prove that a mental injury is due to a single fortuitous event in order to be compensable under the workmen's compensation act (CLS 1956, § 412.1).

8. SAME—EXISTENCE OR EXTENT OF INJURY—FINDING OF FACT—
EVIDENCE.

The existence or extent of an injury or disability is a finding
of fact by the workmen's compensation appeal board and will
not be disturbed, where supported by competent evidence (CLS
1956, § 412.1).

9. SAME—CONTINUING COMPENSATION—PARANOID SCHIZOPHRENIA.

An award of continuing workmen's compensation benefits should
not be made for employee who had sustained a period of dis-
ability due to paranoid schizophrenic condition after symptoms
thereof have disappeared and he may return to employment
other than that to which his personality configuration makes
him more susceptible than others to psychotic breakdowns.

10. COSTS—WORKMEN'S COMPENSATION—PARANOID SCHIZOPHRENIA.

No costs are allowed on appeal from award of workmen's com-
pensation to plaintiff employee who had developed a paranoid
schizophrenic condition while engaged in assembly line work,
where such compensation is ordered terminated upon the ces-
sation of symptoms so that he could engage in other types of
employment.

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

Appeal from Workmen's Compensation Appeal
Board. Submitted January 6, 1960. (Docket No. 20,
Calendar No. 48,117.) Decided December 1, 1960.

James Carter filed his application for compensa-
tion from General Motors Corporation, Chevrolet
Gear & Axle Division, because of psychosis resulting
from tension engendered on production line machine
job. Award to plaintiff. Defendant appeals. Mod-
ified and affirmed.

*Marcus, Kelman, Loria, McCroskey & Finucan*
(*Donald W. Loria* and *LuVerne Conway,* of coun-
sel), for plaintiff.

*Henry M. Hogan* (*G. W. Gloster, E. H. Reynolds,
Stuart McCallum* and *D. A. Knapp,* of counsel), for
defendant.

Souris, J. Ordinarily, compensation under our workmen's compensation act[*] is awarded for incapacity to work because of the crushing of a hand or foot, the inhalation of silicotic dust, or other similar injury arising out of and in the course of employment. Benefits are not awarded for the injury as such, but rather for the loss of earning capacity. Hence, even this Michigan Court, years ago, recognized the right of a claimant under the act to compensation for loss of such earning capacity caused by a mental or emotional disability resulting from a physical injury to claimant or even resulting from observing a physical injury to a fellow employee of claimant. In due course we shall examine the authorities so holding, including decisions of this Court made venerable by age and by the compelling logic of their reasoning, for it is upon those past decisions of this Court that our decision in this case is firmly planted. Our decision is that workmen's compensation benefits are payable for incapacity to work because of a claimant's paranoid schizophrenia arising out of and in the course of employment.

Plaintiff had worked as a machine operator for defendant, General Motors Corporation, with intermittent layoffs, since 1953. On October 8, 1956, he was recalled to work after a 5-month layoff and worked for 4 days on a "brace job" and then was transferred on October 12th to a "hub job". This operation required him to take a hub assembly (consisting of a case and cover) from a nearby fellow employee's table to his own workbench, remove burrs with a file and grind out holes in the assembly with a drill, and place the assembly on a conveyor belt. Plaintiff was unable to keep up with the pace of the job unless he took 2 assemblies at a time to his workbench, and he feared another layoff should he prove

---

[*] CL 1948 and CLS 1956, § 411.1 et seq. (Stat Ann 1950 Rev and Stat Ann 1957 Cum Supp § 17.141 et seq.).

unable satisfactorily to do the work. He was instructed repeatedly by his foreman not to take 2 assemblies at a time because the assembly parts became mixed up on the conveyor belt when he did so. However, plaintiff continued having trouble "getting on to the job" as it was supposed to be performed. Thus, when he took only 1 hub assembly at a time, he fell behind; when he fell behind, he took 2 assemblies; but, when he took 2 assemblies, he got the assemblies mixed up and was berated by the foreman.

We are told that the dilemma in which plaintiff found himself resulted on October 24, 1956, in an emotional collapse variously described as paranoid schizophrenia and schizophrenic reaction residual type. He was subsequently hospitalized for a period of 1 month, during which time he received shock therapy. In July of 1957 he filed an application for hearing and adjustment of claim for compensation under the workmen's compensation act.

It should be noted that there is not involved in this case a psychosis resulting from a single fortuitous event nor is there involved a psychosis resulting from a direct physical blow to plaintiff's body. Instead, there is involved a psychosis claimed to be the result of emotional pressures encountered by plaintiff daily, in the performance of his work.

The referee entered an award of workmen's compensation for a disability described as "traumatic neurosis, traumatic psychosis, functional disability and sequelae thereof". The workmen's compensation appeal board, by a divided vote, affirmed the award for total disability from October 24, 1956, until January 7, 1957, plus reimbursement for medical and hospital care. The appeal board, in addition, allowed to plaintiff continuing compensation from and after January 7, 1957.

Pertinent quotations from the 3 opinions filed by members of the appeal board follow:

(1) Chairman McLaughlin:

"Plaintiff sustained a personal injury arising out of and in the course of employment and due to causes and conditions characteristic of and peculiar to the business of his employer.  *  *  *  As the result of the injury plaintiff has been totally disabled since October 24, 1956, from doing the work he was performing for defendant prior to that date. Plaintiff cannot safely be subjected to pressures or strains. He is not able to perform work which is highly competitive or requires a certain production rate. Plaintiff is and has been since October 24, 1956, disabled from earning full wages at the work in which he was last subjected to the conditions resulting in disability."

(2) Member Storie:

"The disability is due to an aggravation of a pre-existing condition by more than one nonfortuitous event. I hold the disability is compensable under the provisions of part 2 of the workmen's compensation act and concur with Chairman McLaughlin in granting compensation."

(3) Member Ryan:

"I do not agree that the plaintiff's disability is due to causes and conditions characteristic of and peculiar to the defendant's business.  *  *  *

"There is nothing in this case identifiable as an occupational risk.

"The job was a simple job and the foreman's instructions were even simpler. Nothing more emanated from the employment.

"The disability arose out of the plaintiff's own feelings and misapprehension and from within himself completely."

The order of the appeal board is attacked, among other reasons, because no 2 members of the 3-member board found plaintiff's disability compensable under the same section of the act. Nevertheless, the de-

cision of 2 of the 3 members of the board was that plaintiff suffered a compensable injury. Section 11 of chapter 1A of the act creating the workmen's compensation appeal board (CLS 1956, § 408.11 [Stat Ann 1959 Cum Supp, § 17.6(17)]) provides that the "decision of a majority of the board shall be the decision of the board". It is not unusual for members of a body performing a judicial function to arrive at the same conclusion via diverse reasoning. (See, for example, *Samels* v. *Goodyear Tire & Rubber Co.,* 317 Mich 149, where 6 justices of this Court voted to affirm an award of compensation, 3 justices grounding their decision on part 2 and 3 justices on part 7.) The decision of the board is within the statutory mandate.

However, in order to uphold the board's decision awarding *any* compensation, this Court must be satisfied, first, that there is competent evidence to uphold the finding of causal connection made by a majority of the board, and second, that plaintiff suffered a disability which is compensable under the act.

As to the first point, the only medical testimony offered is that of the treating physician. He testified as follows:

"The patient saw himself as in an impossible situation in which he couldn't win. He couldn't please the foreman operating the machine in his job the way he was. If he attempted to do it the foreman's way he would fall behind in his work and the men on the line would complain and the foreman would get after him for this. So he really felt himself caught in an impossible situation which had no solution.
\* \* \*

"My feeling is that Mr. Carter showed some evidence of instability earlier in his life. Namely, this episode in the service where he went absent without leave relatively frequently and was discharged for that reason. That apparently subsequent to this he

was able to make a fairly satisfactory adjustment, but that he managed to avoid situations wherein he felt trapped. For instance, he mentioned that on his construction job he was all over, that he worked in many different places. And apparently in his experience with General Motors, too, he was never on a job where he felt he could not meet the demands of the job. Now, I feel that here we had an unhappy combination of circumstances, that after a period of a layoff the man comes into a new job which for somebody, I think with the relative inflexibility of personality that this man had, required some adaptation. So that already he was working in a new position with which he was not familiar and he found himself in a—as I believe I described it before, in what to him was an impossible situation. Namely, that he could not meet the foreman's demands and stay on the work and doing it the way the foreman wanted him to do, and on the other hand, if he did keep up, then his job was threatened in that fashion. So that he actually felt that the job which he had described to his wife as liking very much was threatened in either way. We frequently see a situation of this type where the person feels himself trapped in a situation that has no solution, at least to them, precipitating a schizophrenic breakdown. And I think the indications are that this is what occurred here. * * *

"I think that he has had the personality predisposition towards the development of this illness for a number of years. This is what usually happens, but then this is the straw that breaks the camel's back, and they develop the actual psychosis in which they are out of touch with reality. Now, we have no reason to believe that he was before out of touch with reality."

This was competent expert opinion testimony, upon which the board could and did base a finding of causal connection. Such a factual determination is binding upon this Court, there being competent evi-

dence to support it. *McVicar* v. *Harper Hospital,*
313 Mich 48; *Redfern* v. *Sparks-Withington Co.,* 353
Mich 286; and CL 1948, § 413.12 (Stat Ann 1950 Rev
§ 17.186). It may be noted that the defendant offered
no medical testimony to rebut that given in behalf of
claimant by Dr. Lawrence P. Tourkow, a specialist in
the field of psychiatry and psychiatric consultant to
the public schools and the board of health of the city
of Highland Park. The record discloses that Dr.
Tourkow's professional qualifications as an expert
witness were not challenged by defendant.

The second point, whether or not plaintiff suffered
a disability compensable under the act, presents a
more difficult question. This Court has previously
held that emotional disabilities are compensable un-
der the act. *Klein* v. *Len H. Darling Co.,* 217 Mich
485; *Karwacki* v. *General Motors Corporation,* 293
Mich 355; *Hayes* v. *Detroit Steel Casting Co.,* 328
Mich 609; and *Redfern* v. *Sparks-Withington Co.,*
*supra.* Whether the cause of such emotional disabil-
ity is a direct physical injury (*Redfern* v. *Sparks-
Withington Co.*) or a mental shock (*Klein* v. *Len H.
Darling Co.*), we have held the disability compensa-
ble. What distinguishes the case at bar from our
other decisions which recognize the compensability
of such disabilities is that this plaintiff's disability
was caused by neither a single *physical* injury to
plaintiff nor by a single mental shock to him. In-
stead, his disability was caused by emotional pres-
sures produced by production line employment not
shown by him to be unusual in any respect,—that is,
not shown by him to be any different from the emo-
tional pressures encountered by his fellow workers in
similar employment. As noted above, the finding of
causal relationship between plaintiff's disability and
the pressures of his employment was supported by
the evidence. The question then becomes, must in-
dustry, under our laws, bear the economic burden of

such disability? Implicit in the question as stated is the further question: Is a worker unable to work because of a mental injury caused by his employment to be treated differently from a worker unable to work because of a physical injury caused by his employment? Our answer may be found in this Court's prior decisions and in the decisions of other courts in other jurisdictions with comparable laws which have considered the problem.

· We make no claim that it is universaly held that a mental disorder which is precipitated solely by a mental stimulus, as opposed to a physical impact, is considered a compensable personal injury. There are those jurisdictions in which no nervous disorder is compensable. For example, *Star Publishing Co.* v. *Jackson,* 115 Ind App 221 (58. NE2d 202), was a 1944 Indiana case involving a linotype operator who developed a recurring spasm in his left hand. Diagnosed, and proved, as an occupational neurosis caused by the antagonistic relationship between the claimant and his foreman, this disability was held not compensable. See, also, *McGill Manufacturing Company, Inc.,* v. *Dodd,* 116 Ind App 66 (59 NE2d 899), for a similar holding.

· In New Jersey, a stenographer was called an "idiot" by a coworker when she misunderstood what she was supposed to do. This incident upset her, and she was subsequently treated for a nervous disorder. Her petition was dismissed by a referee in a proceeding under the New Jersey workmen's compensation act, for the following reason:

"I am satisfied that the petitioner did not meet with an accident arising out of and in the course of her employment; in fact, there was not one iota of testimony to even suggest an *accidental occurrence."* *Voss* v. *Prudential Insurance Co.,* 14 NJ Misc 791 (187 A 334). (Emphasis supplied.)

The referee's reason for denying compensation is inapplicable in Michigan in the light of our recent holdings in *Sheppard* v. *Michigan National Bank,* 348 Mich 577, and *Coombe* v. *Penegor,* 348 Mich 635. The following holding by the appellate division of the supreme court in New York may be distinguished in the same manner:

"The record here discloses that claimant became angry which resulted in an emotional strain and superimposed upon a pre-existing mental condition resulted in the claimant's disability.

"It may be logically argued that claimant here is just as disabled as someone suffering from a physical disability. This we do not dispute but it does not, at present, constitute *an accident as defined by the workmen's compensation law.* It is not within our province to decide otherwise." *Chernin* v. *Progress Service Co.,* 9 App Div 2d 170, 172 (192 NYS2d 758). (Emphasis supplied.)

In Nebraska, whose statute requires violence to the physical structure of the body, compensation was denied to an elevator operator for shock occasioned by seeing a passenger killed. *Bekeleski* v. *O. F. Neal Co.,* 141 Neb 657 (4 NW2d 741).

In Texas, however, where an injury is defined as damage or harm to the physical structure of the body, compensation was allowed a structural steel and iron worker whose anxiety state, which prevented him from doing his regular work, was precipitated by a "psychic trauma", *viz.,* fright occasioned by the collapse of a scaffold, 8 stories up, from which his co-worker thereon fell to his death. The court said damage to the nervous system constituted damage to the physical structure of his body, since the physical structure no longer functioned properly due to the nervous system disorder. *Bailey* v. *American General Insurance Co.,* 154 Tex 430 (279 SW2d 315). In any event, neither the Nebraska case nor the

Texas case turned on the *cause* of the damage to the nervous system. Both were primarily concerned with the result, due to their peculiar statutory definitions. In the Texas case, however, that a mental stimulus caused the disability was not considered a bar, and that is the significant point with respect to the case at hand.

This was true as well in West Virginia in 1935. A miner became lost, and remained alone in the mine until found 7 days later. For several weeks thereafter he couldn't return to work as a result of shock and exhaustion. Compensation was affirmed in *Montgomery* v. *State Compensation Commission,* 116 W Va 44 (178 SE 425).

Another case with a purely nonphysical impact stimulus involved a young lady who was frightened by the flash from a short circuited motor and fainted. She returned to work, but some weeks later when she saw the fellow worker who had caught her when she first fainted, she fainted again. She could not thereafter return to work because of this neurosis, and an award of compensation was affirmed, notwithstanding the fact that she was merely frightened without physical contact or harm. *Burlington Mills Corp.* v. *Hagood,* 177 Va 204 (13 SE2d 291).

The Massachusetts court allowed recovery for paralysis of an employee's left side caused solely by fright when lightning struck machines near which she was sitting while eating lunch. *Charon's Case,* 321 Mass 694 (75 NE2d 511). Construing statutory language comparable to our own,* the court said (pp 696, 697):

"This statute does not in terms or by implication exclude an injury causally connected with the employment merely because the injury was not occa-

---

* CLS 1956, § 412.1 (Stat Ann 1959 Cum Supp § 17.151).

sioned by physical impact or the application of some form of external violence to the body.  *    *    *

"The principle enunciated in the *Spade Case* [*Spade* v. *Lynn & Boston R. Co.*, 168 Mass 285 (47 NE 88, 60 Am St Rep 393, 38 LRA 512), a common-law negligence action for damages] cannot be extended to cases arising under the workmen's compensation act. The present proceeding is not one brought for an assessment of damages for pain and suffering due to a personal injury as was the *Spade Case,* but is a proceeding created by our statutes enacted for the purpose of ameliorating the economic plight of an employee injured in the course of and on account of his employment, or of his dependents if death ensues from his injury, by imposing upon industry the obligation to pay to him weekly payments at rates based upon his wages during the period he is disabled or, if his injuries were fatal, to his dependents in the amounts and during the period prescribed by the act. Ordinarily compensation is awarded for incapacity to earn and not for the injury as such. [Cases cited.] Liability to make payments is not based upon negligence of the employer, and negligence of the employee not amounting to serious and wilful misconduct is no bar to an award of compensation. [Cases cited.] The amount of payments is fixed by the workmen's compensation act and is different from the measure of damages prevailing at common law. [Cases cited.] The special reasons assigned in the *Spade Case* for denying recovery have no application to workmen's compensation cases. The weight of authority even in jurisdictions where compensation is limited to personal injury caused by accident is to the effect that a personal injury due entirely to nervous shock, fright or terror is a compensable injury. [Cases cited, including *Monk* v. *Charcoal Iron Co. of America,* 246 Mich 193.]"

There is Michigan precedent also, long established precedent at that. It was in January of 1920 that Otto Klein died. Just a few weeks earlier he had let

a piece of machinery slip from his hands. It fell to the floor below, striking a fellow employee. Though the injury to his coworker was not serious, Otto Klein thought he had caused his death. The mental and nervous shock caused by this accident to his fellow employee, at his hands, resulted in a neurotic condition, causing Mr. Klein's death. His injury and death were held compensable notwithstanding that (as this Court said in *La Veck* v. *Parke, Davis & Co.,* 190 Mich 604, 605 [LRA1916D, 1277]) no "visible accident occurred and no event causing external violence to applicant's body" occurred. *Klein* v. *Len H. Darling Co., supra.* The philosophy expressed by Justice WEIST, concurring (p 495), is worth repeating here:

"At first I was inclined to disagree with Mr. Justice MOORE, but upon reflection I am convinced he is right. An accident happened in which the deceased was an actor, and the shock to him was so acute, and so depressed his vital forces as to kill him. We must not overlook man's nervous system and mental makeup and their intimate relation to his vital forces.

"This man died because his vital forces could not meet and withstand the acute depression occasioned by what he had done in the course of his employment. The injury to him was no less real, and fatal in its consequences, than a mortal wound. 'Accidents', within the comprehension of the workmen's compensation law, include all accidents actionable at law and all former nonactionable accidents, except in case of intentional and wilful misconduct on the part of the employee."

In 1943, in *Rainko* v. *Webster-Eisenlohr, Inc.,* 306 Mich 328, this Court said that it is not necessary to establish physical injury resulting in outward evidence of violence or trauma to justify an award of compensation. Plaintiff was one of 30 women victims of "mass hysteria" caused by an odor from gas-

oline vapor of less than toxic concentration in the area where the women worked in a cigar factory. The women collapsed, one after another, and plaintiff was left with dizzy spells, nausea, rash, hyperactive reflexes, an epigastric tenderness, anemia, and loss of weight. The Court sustained an award of compensation.

This Court's most recent statement respecting compensability of a neurotic condition may be found in *Redfern* v. *Sparks-Withington Co., supra,* at p 299:

"In this State, the rule is well established by a line of authority dating from 1922 that where occupationally-incurred injury to the body and/or shock to the nervous system produces a neurosis resulting in disability or death, it is compensable."

In *Redfern,* plaintiff while at work was struck on the back by a steel weight and was thereafter disabled from working by what the medical witnesses described as "conversion hysteria". There was no organic cause for her loss of feeling and strength in her right hand and arm, swelling and pain in the right shoulder and neck area, and general fatigue. Compensation was allowed.

It would be well to note that, in the case at bar, although there was no evidence of psychosis prior to October, 1956, the expert testimony did indicate that plaintiff had a personality disorder all his life and that he had a predisposition to the development of a schizophrenic process.

There was also evidence that the plaintiff had been examined in the emergency room of the Highland Park General Hospital 4 days before the last day he worked, and that his condition at that time was described as "bronchial asthma and anxiety". An exhibit submitted by the defendant was a report from a doctor examining the claimant just prior to October

24, 1956, wherein Mr. Carter was advised to take a leave of absence for 2 or more weeks because of a severe state of anxiety and tension. It would appear, therefore, that the series of events in the instant case served to aggravate a pre-existing latent mental disturbance. That such is not a bar to compensation may best be pointed out by quoting from the Court's opinion in *Karwacki* v. *General Motors Corporation, supra,* from pp 356 and 357:

"The testimony * * * supports the finding of the department that the accidental injury aggravated a pre-existing latent mental disturbance, resulting in a disabling condition. The result is comparable to situations wherein an accidental injury has aggravated and precipitated a pre-existing latent physical ailment, resulting in disability. Awards of compensation in such cases have been sustained in a multitude of instances."

Appellant contends that there was no single event which precipitated plaintiff's psychotic breakdown and that, therefore, there can be no award of compensation under part 2 of the act. Appellant recognizes that for an award under part 2, no longer is it necessary to find an "accident" or a fortuitous event, citing *Sheppard* v. *Michigan National Bank, supra,* and *Coombe* v. *Penegor, supra,* but appellant further states that it appears from these cases that part 2 applies only to single event injuries. However, it does *not* appear from the *Sheppard* and *Coombe* cases that injuries not attributable to a single event are not covered by part 2.

This Court in the past has sustained an award of compensation under part 2 where the physical injury was not occasioned by a single event. In *La Veck* v. *Parke, Davis & Co.,* 190 Mich 604 (LRA 1916D, 1277), the plaintiff's paralysis was attributed to a cerebral hemorrhage caused by prolonged work

in a heated kitchen.   In affirming an award, the Court said, at p 610:

"According to the testimony of some of the physicians that result could be traced to the unusual hours of work and the unusual conditions.   It was an unexpected consequence from *the continued work in the excessively warm room.*"   (Emphasis supplied.)

Further, to relegate the applicability of part 2 solely to single event injuries, would be to ignore express statutory language referring to multiple event injuries.   Section 1 of part 2 (CLS 1956, § 412.1 [Stat Ann 1959 Cum Supp § 17.151]), provides for a " 'date of injury' * * * in the case of an injury not attributable to a single event", evidencing a legislative intent that such injuries should be compensable.

The case at bar involves a series of mental stimuli or events—the pressure of his job and the pressure of his foreman—which caused an injury or disability under the act, causal connection in fact having been found by the board, supported by competent evidence.   We find further that Mr. Carter's disabling psychosis resulting from emotional pressures encountered by him daily in his work is compensable under part 2 of the act.   Such conclusion renders unnecessary any discussion of the applicability of part 7 to the facts of this case.

Appellant further contests the portion of the appeal board's order awarding continuing compensation based on its finding of a continuing disability. The existence or extent of an injury or disability is a finding of fact and will not be disturbed where supported by competent evidence. *Finch* v. *Ford Motor Co.,* 321 Mich 469, *Walding* v. *General Motors Corporation,* 352 Mich 372.   The testimony of the only medical witness was to the effect that the plaintiff could be employed again, but not on this same type of

job, where it is necessary to keep up with a production line.

If there were testimony that claimant's inability to work on a production line was caused by the paranoid schizophrenic condition for which we have held he is entitled to compensation benefits, he would be entitled to continuing payment of such benefits. However, Dr. Tourkow testified that as of September 11, 1957, Mr. Carter no longer showed any symptoms of paranoid schizophrenia or other psychosis. He testified that Mr. Carter should not be employed again in production work, not because of his paranoid schizophrenia, but for the same reason he should not have been employed in such work in the first place: Mr. Carter has a personality configuration that makes him more susceptible than others to psychotic breakdowns when subjected to pressures such as are encountered in production line employment. Under the circumstances, we find no evidence to support the appeal board's award continuing compensation benefits beyond September 11, 1957.

The order of the appeal board should have terminated payment of benefits to Mr. Carter on September 11, 1957, and upon remand to the appeal board it shall be so modified. In all other respects the order is affirmed. No costs.

SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred with SOURIS, J.

KELLY, J. (*dissenting*). Justice SOURIS affirms the workmen's compensation appeal board under part 2 of the act,* and states: "Such conclusion renders unnecessary any discussion of the applicability of part 7 to the facts of this case."

---

* CL 1948 and CLS 1956, § 411.1 *et seq.* (Stat Ann 1950 Rev and Stat Ann 1957 Cum Supp § 17.141 *et seq.*).

· James H. McLaughlin, chairman of the workmen's compensation appeal board, found that defendant's foreman was "riding" and "wrangling" with plaintiff, and that plaintiff was entitled to receive compensation under part 7 of the act, stating:

"Plaintiff sustained a personal injury arising out of and in the course of employment and due to causes and conditions characteristic of and peculiar to the business of his employer. The conditions of plaintiff's employment involved a hazard greater and different from that to which the public is generally exposed."

Commissioner Storie decided plaintiff was entitled to an award under part 2 and repudiated Chairman McLaughlin's finding under part 7, stating:

"Such finding by Chairman McLaughlin was predicated to a large extent on conditions which he finds were created by the 'wrangling' between the foreman and the plaintiff. I do not agree with Chairman McLaughlin.    *    *    *

"The tempo of the burring job was faster than plaintiff had been accustomed, however, when weighed in the light of employment in general I must conclude as did Member Ryan that there was nothing about the burring job which could be said to create causes and conditions which were characteristic of and peculiar to the business of the defendant employer.    *    *    *    Compared to employment in general within manufacturing establishments this was a relatively simple task that required no unusual lifting, turning or twisting. When weighed in the test of involving a hazard greater and different from that to be found in employment in general then a holding of causes and conditions characteristic of and peculiar to this employer's business must fail. Since there is no showing that there were 'causes and conditions characteristic of and peculiar to the business of the employer' I hold plaintiff's claim is not compensable

under the provisions of part 7 of the workmen's compensation act."

Commissioner Ryan in his opinion stated:

"The plaintiff's medical testimony indicates that he has had, for many years, a personality predisposition to the development of a schizophrenic psychosis. He started working on the job in question on October 12, 1956. It was an ordinary job. There was nothing about it that presented any special or distinguishing hazard of mental strain. The difficulty that developed grew out of his refusal to comply with specific and reasonable instructions from his foreman. He felt that he could do the work faster by doing it in his way although the record does not indicate why his way would be faster. His psychosis commenced on about the 5th day with the complete breakdown following on about the 10th day. It clearly was related by way of precipitation to his feeling that he could not keep up his work and follow his foreman's instructions.

"Chairman McLaughlin grants compensation under part 7. Section 1 of that part defines personal injury to 'include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment.'

"The accepted test of compensability under part 7 has been whether or not the conditions of employment result in a hazard which distinguishes it in character from the general run of occupations. * * *

"In this case there was no special or distinguishing hazard or anything out of the ordinary in the way of duty-risk insofar as the plaintiff's job was concerned. All that emanated from the job was the giving of simple instructions by the foreman to the plaintiff for the performance of a simple job. I do not agree that the plaintiff's disability is due to

causes and conditions characteristic of and peculiar to the defendant's business.

"Member Storie grants compensation under part 2. He is in accord with me in finding that the plaintiff's disability is not due to causes and conditions characteristic of and peculiar to the business of the employer but he grants compensation under part 2 with the finding that the disability arose out of and in the course of the employment. I disagree with the latter finding. I do not believe that the injury arose out of the employment. * * *

"I do not believe that the plaintiff's disability arose out of his employment because of the total picture presented by the following considerations:

"There is nothing in this case identifiable as an occupational risk.

"The job was a simple job and the foreman's instructions were even simpler. Nothing more emanated from the employment.

"The disability arose out of the plaintiff's own feelings and misapprehension and from within himself completely. * * *

"Nevertheless, compensation is being granted and a more extreme case is not apt to be encountered. I do not believe that workmen's compensation was ever intended to cover this kind of a situation."

Defendant's position is set forth in its brief as follows:

"It would seem to us that if the plaintiff is to recover in this case he would have to meet the requirements of part 7. There is no one thing or event which is claimed in this case. This can be seen from the testimony and from the application for compensation. * * *

"The testimony does not indicate that plaintiff's disability is due to causes and conditions peculiar to his employment. His disability is due to and arises out of his mental condition. * * *

"The plaintiff's job was a simple one, and the instructions were simple also. There was no special

and distinguishing hazard on plaintiff's job. It is very apparent that the plaintiff had a very unrealistic attitude towards his job due to his personality disorder. We do not think that there should be liability in cases where an employee, by reason of his delusions, should feel trapped or feel insecure in his job. This could lead to liability in cases where the disability results from conditions which are built up in the mind of the employee. An employee might brood over not getting a raise, feeling that his boss did not like him, and could get compensation despite the fact that this may not be the true situation.

"We also contend that the workmen's compensation appeal board by majority opinion has made a finding of fact in this case that there is no liability under part 7.

"Under section 12, part 3, of the workmen's compensation law (CL 1948, § 413.12 [Stat Ann 1950 Rev § 17.186]), such findings of fact are conclusive. * * *

"Liability under part 2, which is found by Member Storie, seems to be based on the premise that the unusual result of the occupation is an injury under part 2. We would say that the unusual result, if there is one, would be caused by the condition of plaintiff's mind and not by his occupation. We say again, however, that there being no single event alleged or found by the workmen's compensation appeal board that part 2 does not apply. Plaintiff's claim is predicated entirely on the conditions of his job. An injury under either part 2 or part 7 must arise out of and in the course of the employment."

Part 7, § 1, subd c (CL 1948, § 417.1 [Stat Ann 1950 Rev § 17.220]), reads:

"The term 'personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside

of the employment shall not be compensable: Provided, however, That a hernia to be compensable must be clearly recent in origin and result from a strain arising out of and in the course of the employment and promptly reported to the employer."

Justice SOURIS refers to decisions from Michigan and from other jurisdictions to sustain his opinion. An analysis of these cited cases discloses that while they sustain the compensability of emotional disability, in each instance there was some precipitating factor as disclosed by the following:

Plaintiff's husband's death resulted from shock caused by dropping an object on a fellow employee, knocking said fellow employee unconscious (*Klein* v. *Len H. Darling Co.,* 217 Mich 485); plaintiff became emotionally disabled after a piece of hot metal entered his glove (*Karwacki* v. *General Motors Corporation,* 293 Mich 355); plaintiff, after suffering the loss of an eye by an occupational injury, developed a post traumatic neurosis and was unable to work (*Hayes* v. *Detroit Steel Casting Co.,* 328 Mich 609); plaintiff was injured when a 15- to 20-pound steel weight struck her between her shoulder blades and she subsequently suffered conversion hysteria (*Redfern* v. *Sparks-Withington Co.,* 353 Mich 286); plaintiff and 30 other employees suffered mass hysteria caused by an odor of gasoline vapor, after which plaintiff was unable to work because of dizziness (*Rainko* v. *Webster-Eisenlohr, Inc.,* 306 Mich 328); plaintiff's husband died from shock and excitement and overexertion in attempting to pull a fire from a boiler in order to prevent an explosion (*Monk* v. *Charcoal Iron Co. of America,* 246 Mich 193); plaintiff tried to lift a 25-pound tray of cards and suffered an injury when she attempted to yank it free (*Sheppard* v. *Michigan National Bank,* 348 Mich 577);

plaintiff suffered an injury when he exerted great effort to tighten a load binder (*Coombe* v. *Penegor,* 348 Mich 635).

The final Michigan case cited by Mr. Justice SOURIS, *La Veck* v. *Parke, Davis & Co.*, 190 Mich 604 (LRA1916D, 1277), is the only case where there was not an overt act or a direct physical injury leading to neurosis. In this case claimant was awarded compensation for a cerebral hemorrhage induced by heat and overexertion. The court held that since evidence that tends to sustain a determination of the industrial accident board is not subject to review, in appellate proceedings, on writ of certiorari to review the award of compensation for paralysis that resulted from heat and excessive exertion rupturing a small blood vessel of the brain (claimant having suffered from arteriosclerosis for 2 years prior to his injury), the question whether it was caused by an accident arising out of or in the course of claimant's employment was for the lower tribunal and would not be reversed unless a total lack of evidence upon that issue was disclosed.

Justice SOURIS cites 4 decisions from other jurisdictions to sustain his opinion, and the following briefing of the facts in those cases, I believe, discloses they are dissimilar to the facts in our present appeal. Plaintiff-claimant's fellow worker fell off a scaffold to his death and plaintiff, who was almost killed, was subsequently unable to work at heights (*Bailey* v. *American General Insurance Co.*, 154 Texas 430 [279 SW2d 315]); plaintiff suffered a traumatic neurosis and could no longer work, her neurosis being caused from fright when a short circuit from a motor caused a flash (*Burlington Mills Corp.* v. *Hagood,* 177 Va 204 [13 SE2d 291]); plaintiff suffered paralysis caused solely from fright when lightning struck the building and blew out 3 motors near a

machine at which she was sitting (*Charon's Case,* 321 Mass 694 [75 NE2d 511]).

The final of the 4 out-State decisions Justice SOURIS cites (*Montgomery* v. *State Compensation Commissioner,* 116 W Va 44 [178 SE 425]) dealt with a miner who became lost in a mine and thereafter suffered shock and exhaustion. In granting compensation the West Virginia court stated (pp 46, 47):

"It is clear that the term 'personal injury' as used in the workmen's compensation act of this State contemplates and includes the result of unusual exposure, shock, exhaustion, and other conditions not of traumatic origin provided that they are attributable to a specific and definite event arising in the course of and resulting from the employment. We think therefore that the condition in which Montgomery found himself as a consequence of getting lost in the mine is an injury within the meaning of the compensation act inasmuch as it is attributable to a specific and definite event."

Justice SOURIS, after stating that:

"What distinguishes the case at bar from our other decisions which recognize the compensability of such disabilities is that this plaintiff's disability was caused by neither a single *physical* injury to plaintiff nor by a single mental shock to him. Instead, his disability was caused by emotional pressures produced by production line employment not shown by him to be unusual in any respect,—that is, not shown by him to be any different from the emotional pressures encountered by his fellow workers in similar employment. As noted above, the finding of causal relationship between plaintiff's disability and the pressures of his employment was supported by the evidence. The question then becomes, must industry, under our laws, bear the economic burden of such disability?"

answers the question by saying:

"We make no claim that it is universally held that a mental disorder which is precipitated solely by a mental stimulus, as opposed to a physical impact, is considered a compensable personal injury. There are those jurisdictions in which no nervous disorder is compensable."

and he cites and briefly quotes from Indiana, New Jersey, and New York decisions.

I quote more completely from the Indiana and New York decisions. In *McGill Manufacturing Company, Inc.,* v. *Dodd,* 116 Ind App 66 (59 NE2d 899), it was held (syllabi):

"A condition diagnosed as spastica torticollis, commonly known as wryneck, and which was a neurosis, was not incidental to the work of claimant who was engaged in operating a bore-grinding machine, for a neurosis is an ailment to which the general public is exposed outside such employment."

"The occupational diseases act was not intended to provide general health insurance to the workman, but to compensate him for disability resulting only from a disease incidental to the character of the business in which he is employed and having its origin in a risk connected with the employment, and to exclude from the protection of the act workmen suffering from diseases arising out of a hazard to which workmen would have been equally exposed outside their employment and independent of the relation of employer and employee."

"The occupational diseases act does not extend its protection to those workmen who suffer from outward manifestations and symptoms of many possible vagaries and aberrations of the human mind which, although having some causal connection with an employment are, nevertheless, ills all human flesh is heir to, unless, in such cases, the causative inducing

the mental condition be an intervening occupational disease, as defined by the act."

In *Chernin* v. *Progress Service Co., Inc.,* 9 App Div 2d 170 (192 NYS2d 758), a cab driver hit a pedestrian but did not suffer any physical injury to himself. However, he suffered a mental disorder and sought compensation. The New York court held (p 172):

"The question here is novel as it apparently has not heretofore been decided by the courts. Larson on Workmen's Compensation Law has little text on the subject but cites a New Jersey case, *Voss* v. *Prudential Insurance Co.,* 14 NJ Misc 791 (187 A 334), where a stenographer was called an 'idiot' by a coworker, became upset thereby and subsequently was treated for a nervous spell. That court determined there was no accident arising out of and in the course of her employment.

"While it may accurately be claimed the facts would be sufficient to sustain the board if the injury were of a physical nature, we find the present facts not compensable under the law. Heart cases come closest to the present situation where a pre-existing condition was aggravated but there has always been a physical reaction—damage to the heart—as distinguished from mental. Furthermore, the rule in heart cases has been extended with great liberality, but the happening of some external event in connection with the work and causing the heart condition has been required. *Lesnik* v. *National Carloading Corp.,* 285 App Div 649, 651 (140 NYS2d 907), affirmed 309 NY 958 (132 NE2d 326).

"We find nothing in the law that connotes purely excessive emotions—anger, grief or other mental feelings—unaccompanied by physical force or exertion can be the basis of an accident. The record here discloses that claimant became angry which resulted in an emotional strain and superimposed upon a pre-existing mental condition resulted in the claimant's disability.

"It may logically be argued that claimant here is just as disabled as someone suffering from a physical disability. This we do not dispute but it does not, at present, constitute an accident as defined by the workmen's compensation law. It is not within our province to decide otherwise.

"The board in their memorandum decision conceded there was no 'physical hurt' but the findings conclude he became emotionally disturbed as the result of questions by the police and that due to the emotional episode and psychological trauma he sustained an exaggeration of a pre-existing emotional disorder which resulted in schizophrenia, paranoid type.

"For the reason herein stated, the finding of the board that it was an accidental injury within the provisions of the workmen's compensation law should be reversed and the claim dismissed."

Justice SOURIS refers to *Klein v. Len H. Darling Co., supra,* as Michigan precedent and quotes the concurring opinion of Justice WIEST. The following sentence in Justice WIEST's opinion (p 495) clearly distinguishes the *Klein Case* from our present appeal:

"An accident happened in which the deceased was an actor, and the shock to him was so acute, and so depressed his vital forces as to kill him."

*Karwacki v. General Motors Corporation, supra,* is cited to establish that "a pre-existing latent mental disturbance" is not a bar to compensation, but the *Karwacki Case* is not similar to the instant case as is disclosed by the following statement in the opinion:

"The testimony  *  *  *  supports the finding of the department that the accidental injury aggravated a pre-existing latent mental disturbance, resulting in a disabling condition."

In deciding this appeal we cannot forget the fact that a majority of the commission found there was no accident and plaintiff, while performing a simple job comparable to others employed, suffered a mental breakdown because he could not adequately perform that simple job.

*Sheppard* v. *Michigan National Bank* and *Coombe* v. *Penegor, supra,* are majored in Justice SOURIS' opinion with the statement that it does not appear "that injuries not attributable to a single event are not covered by part 2." I do not believe either of these cases is of compelling weight, because in both cases there was a single precipitating event and in neither case did we have a plaintiff that possessed such a mentality as to cause him to lose all control of himself without any accidental or unusual event.

*Redfern* v. *Sparks-Withington Co., supra,* is referred to as this Court's most recent statement respecting compensability of a neurotic condition. Suffice to say, in a 5-to-3 decision we held that a neurosis developing from an injury is compensable if directly caused thereby and not collateral thereto. There was no injury or comparable facts in this present appeal.

Defendant submits 2 questions in its statement of questions involved:

"1. Is the plaintiff's disability the result of a personal injury arising out of and in the course of his employment under either part 2 or part 7 of the Michigan workmen's compensation law?"

My answer to question No. 1 is "No."

"2. Is there any competent evidence in the record to sustain the finding of the workmen's compensation appeal board that the plaintiff is entitled to continuing compensation?"

The hearing referee (James A. Broderick) found "that said defendant pay compensation at the rate of $36 per week for total disability to said employee from October 24, 1956, to January 7, 1957, inclusive; and, that said defendant shall reimburse said employee $863.27 for medical and hospital care."

Appellee's position on this point is set forth in his brief as follows:

"The undisputed medical testimony accepted by the appeal board relative to disability was presented by the treating physician, Dr. Tourkow: Plaintiff should not be employed on a job which is highly competitive. He should be placed upon a job where he would have to maintain a certain rate of production. He certainly would not be employable in piece work. The type of job that Dr. Tourkow felt that the plaintiff would be able to handle would be a job where he would be able to function at his own level of production without having to push himself. Dr. Tourkow testified that plaintiff was well motivated toward working; that plaintiff actually wanted to work but that he would advise very strongly against anything which would resemble the competitive situation which produced plaintiff's psychotic break. * * *

"The plaintiff has been able to do a certain amount of casual farm labor, but that is a far cry from a competitive production-line job. Because of the very nature of plaintiff's disability, the plaintiff himself is incapable of making a reliable judgment as to his own capacity. * * *

"The plaintiff's right to compensation for a disability does not depend upon his being totally disabled from doing *any* work but on his being disabled from earning full wages in the work in which he was last subjected to the conditions resulting in his disability. * * *

"The appeal board has made a finding of fact, a finding based on uncontradicted testimony. Defendant should not now be permitted to circumvent the

appeal board's finding on this or any other factual issue."

The 3 members of the board filed lengthy opinions but only briefly referred to continuing disability.

Chairman McLaughlin found:

"Plaintiff contends that he did sustain such an injury and that he is entitled to compensation beyond January 7, 1957, and until further order of the department.

"We find as follows: Prior to October, 1956, plaintiff had a personality configuration which made him particularly susceptible to the development of a schizophrenic psychosis. Nevertheless plaintiff had suffered no mental breakdown and had not been out of touch with reality prior to October 24, 1956. There was no psychosis before such date. * * * The date of injury and date of disablement is October 24, 1956. As the result of the injury plaintiff has been totally disabled since October 24, 1956, from doing the work he was performing for defendant prior to that date. * * *

"The award of the hearing referee shall be modified to thus provide for continuing compensation from and after January 7, 1957, the date on which the referee stopped compensation."

Commissioner Storie stated:

"The record is void of any showing of other 'events' which could reasonably be held to have been the precipitating cause of plaintiff's disability. It is evident that this well-qualified medical witness is of the opinion that the events created by and encountered during the course of the employment could have been 'the straw that breaks the camel's back' in the instant case. We then clearly have a disability and an unexpected result that arose out of and in the course of this employee's employment with defendant company. * * *

608   361 Michigan Reports.   [Dec.

"From the proofs presented it would be mere speculation for us to hold that plaintiff would have been disabled because of the pre-existing condition even though he had not been employed by defendant company. There are no suggested reasons for plaintiff's mental breakdown other than those which did occur during the course of his employment. * * * Since plaintiff's capacity to earn cannot be measured against his incapacity the continuing award entered by the hearing referee is proper."

As hereinbefore noted, Commissioner Ryan found that plaintiff was not entitled to compensation.

Plaintiff's exhibit 1 was a statement of Dr. Warner to the president of Local 235, under date of January 29, 1957, in which he said:

"Mr. James Carter was hospitalized at St. Clair Hospital from 10-27-56 to 11-23-56. During his hospitalization he was treated for a nervous disorder which we have not been able to diagnose. He was given a thorough physical examination and was found to be in excellent condition. * * *

"Our last contact with him was on January 21st, and he was physically fit to return to his employment."

Dr. Tourkow referred to the St. Clair Hospital diagnosis as follows:

"Well, actually, this was the diagnosis they arrived at at St. Clair Hospital, was paranoiac schizophrenia, and it certainly would be in keeping with these progressively developing feelings that the foreman was persecuting him, you see. Right now I don't see any evidence of paranoid schizophrenia *per se.* I do see some very minimal left over of a schizophrenic process, but really if you didn't know that the person had had this before, you wouldn't make a diagnosis solely on the symptoms. So this is why I used the term 'in remission' in my present diagnosis. In remission means that he's now not psychotic, he's not showing any symptoms right now."

The record discloses that plaintiff had this personality disorder all his life. He proved that he could not adjust to rules or regulations while in the army, but repeatedly went absent without leave.

I agree with appellant's statement that: "The testimony does not indicate that plaintiff's disability is due to causes and conditions peculiar to his employment. His disability is due to and arises out of his mental condition." And, I also agree with appellant that the answer to its question No. 2 should be "No," and conclude that the decision of the workmen's compensation appeal board should be reversed.

The award should be reversed. No costs.

DETHMERS, C. J., and CARR, J., concurred with KELLY, J.