Brenda C. Breeden

*v.*

Workmen's Compensation Commissioner

*and*

Grand Union Of Martinsburg, Inc.

(No. 15130)

Decided December 17, 1981.

*Askin & Burke and D. Michael Burke* for appellant.

*Rice, Hannis & Douglas and Lacy I. Rice, Jr.*, for appellee.

*Frank W. Helvey, Jr.*, Legal Division, State Workmen's Compensation Com'r, for SWCC.

MCGRAW, JUSTICE:

This important appeal by Brenda C. Breeden, a workmen's compensation claimant, presents the question of whether a physical or mental disability which results from stress in the work place is compensable as a disability under the workmen's compensation law of this state. After examining the question, we conclude that this type of disability is compensable under the West Virginia laws.

Brenda C. Breeden began working as a part-time cashier for the Grand Union Company at its Martinsburg, West Virginia store in May of 1970. On January 12, 1976, she filed an application for workmen's compensation benefits, alleging that she was disabled in the course of and resulting from her employment with Grand Union. Specifically, she claimed that for a period of time beginning six months after her employment, she was exposed to continuous and intentional harassment and humiliation from her immediate supervisor, causing her to suffer severe mental and emotional problems.

Her claim was ruled compensable on April 23, 1976, and the employer appealed. A hearing was held on September 14, 1977, at which Mrs. Breeden testified that on several occasions her immediate supervisor cursed, grabbed, and harassed her while she was performing her duties as an employee at that store.

Mrs. Breeden stated that her supervisor had grabbed her posterior while she was working, called her "ignorant," "stupid," a "dumb ass," a "bitch," and constantly castigated her while she was attempting to work. In short, she stated that he directed towards her a continuous course of abuse, largely verbal, but also physical.

A customer at Grand Union, testified on behalf of Mrs. Breeden and stated that she had overheard and observed the supervisor publicly criticize and belittle Mrs. Breeden while she was attending to her duties as a cashier at Grand Union.

The supervisor denied ever having grabbed, cursed, belittled or publicly criticized Mrs. Breeden. However, a union representative testified that he had received a number of complaints similar to those of Mrs. Breeden, in which the supervisor had abused and belittled his employees.

During this period of employment and prior to her employment at Grand Union, Mrs. Breeden was suffering some marital difficulties, but she stated that her marital problems were largely the result of problems she had encountered while working under her supervisor. She admitted that she had received similar treatment from her husband, and that he had, in addition, beaten her. However, she said that she had had no difficulties with her job until her supervisor took charge.

In response to this testimony, a prior supervisor testified on behalf of the employer that during the period of time that he was manager of the store in which Mrs. Breeden worked, she was nervous and unable to work at times due to her problems at home.

A psychiatrist testified that he had been treating Mrs. Breeden since 1974, and that she was suffering from "depressive neurosis." He described its symptoms as difficulty in sleeping, confusion, headaches, gastrointestinal difficulties, anxiety, depression and indecision. He further stated that Mrs. Breeden's disability was work-related; that she was under a great deal of pressure and strain at work; and that, although her marital difficulties and employment problems were mutually aggravating, in his opinion it was because of her job pressure that she was unable to work.

Another psychiatrist treated Mrs. Breeden for two weeks in March and April of 1976 at the Winchester Memorial

Hospital, where she indicated to emergency room personnel that she had attempted suicide. In his opinion, Mrs. Breeden did not suffer from a depressive illness, but she was, at the time of his examination, "simply depressed about her depressing circumstances." Based upon his analysis, he said Mrs. Breeden had a low tolerance for stress, and seemed to have difficulty making comfortable relationships with other people, but that her predominate social conflict was within her marriage.

Nineteen witnesses testified, and over 700 pages of testimony were taken over a period of nearly two years. The number of witnesses testifying for each side was cumulative. Those witnesses appearing for Mrs. Breeden supported her allegations that she was subjected to continuous and unnecessary harassment and belittlement in the course of her duties at Grand Union, and that she suffered from emotional problems and anxiety as a result. Those witnesses testifying on behalf of the employer contradicted much of the testimony of her witnesses, stating that Mrs. Breeden was an overly sensitive woman who was difficult to work with, and that she had not been abused or mistreated in any way.

On August 21, 1979, the Commissioner reversed the previous ruling and denied Mrs. Breeden's application for benefits. The claimant appealed, and on July 29, 1980, the Workmen's Compensation Appeal Board affirmed the Commissioner's order, concluding that "the evidence adduced fails to establish that the claimant's emotional problems were a result of her employment." Mrs. Breeden now appeals that decision.

*W. Va. Code* § 23-4-1 (1981 Replacement Vol.) requires that compensation be paid to employees who "have received personal injuries in the course and resulting from their covered employment." As has been stated in prior holdings of this Court:

> In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2)

received in the course of employment *and* (3) resulting from that employment.

Syllabus Point 1, *Barnett v. State Workmen's Compensation Com'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). All of these requirements are met in the instant action. Here the claimant suffered a personal injury—her mental unbalance and associated physical problems, which resulted from the influences she received in the course of her employment and resulting from that employment. In the words of a prior case "one does not have to be struck by a truck or to be deluged by a slate fall to receive a compensable injury within the contemplation of our compensation law." *Pennington v. State Workmen's Compensation Com'r*, 159 W. Va. 370, 222 S.E.2d 579, 581 (1976).

The Court also found the requirements of injury met in *Montgomery v. State Compensation Commissioner*, 116 W. Va. 44, 178 S.E. 425 (1935), where it was held that a worker suffering from nervous disorders after being lost in a mine suffered an injury by accident. In so holding, the Court stated that "the term 'personal injury' . . . includes the result of . . . conditions not of traumatic origin, provided that they are attributable to a specific and definite event arising in the course of, and resulting from, the employment." *Id.* 178 S.E. at 426. The only distinction between this requirement and the facts of the present case is that in the present case it was a series of events which produced Mrs. Breeden's injuries as opposed to the one event mentioned in this language from *Montgomery*. This problem was resolved by this Court in *Lilly v. State Workmen's Compensation Commissioner*, 159 W. Va. 613, 225 S.E.2d 214 (1976), which pointed out that despite the language quoted above, the cause of the "personal injury" in *Montgomery* was not a single traumatic event but "a situation that developed over a period of time." *Id.* at 217. *Lilly* dealt with a claimant who gradually received a back injury, and held as in the present case, that the gradual receipt of mental and emotional injury will be compensable. Consequently, we hold that the claimant's injury was compensable, occurring as the result of her employment and

within the contemplation of our workmen's compensation law.

The record contains much evidence concerning Mrs. Breeden's injuries. She described the mental and emotional problem she suffered as a result of the treatment she received at work, and her psychiatrist described her symptoms as difficulty in sleeping, confusion, headaches, gastrointestional difficulties, anxiety, depression, and indecision. This evidence was not refuted, and thus Mrs. Breeden's eligibility for compensation is established.

We find, for the reasons stated herein, that the ruling of the Workmen's Compensation Appeal Board was clearly wrong. *Barkley v. Workmen's Comp. Com'r*, ___ W. Va. ___, 266 S.E.2d 456 (1980). Its ruling is, therefore, reversed and this case is remanded with directions that the original ruling below for the complainant be reinstated and that the commissioner desist from his efforts to recover the overpayment.

*Reversed and remanded*
*with directions.*