In the Matter of the Claim of MORRIS L. LESNIK, Respondent, against NATIONAL CARLOADING CORPORATION et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, May 11, 1955.

*Morgan F. Bisselle* and *Warren C. Tucker* for appellants.

*Jacob K. Javits, Attorney-General* (*Harry Pastor* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

*Peter Keber* for claimant-respondent.

BERGAN, J. Claimant in this Workmen's Compensation case is a business executive; to be exact, a vice-president in charge of revenues of the corporate appellant employer. He suffered a heart attack while attending a horse race in California. This incident is the basis of his claim for compensation which the board has allowed.

It could be found readily enough that claimant was at the race track in the course of employment. It was the employer's usual custom that an officer in the territory would make himself available in entertaining a customer. Claimant was traveling in the employer's business in California at that time and went to the race track in connection with the entertainment of a customer by another company official.

It is not, however, demonstrated that anything happened at the race track itself to suggest accidental causation then and there of the physical condition. No stress is shown. Any betting losses which claimant might sustain would be assumed by the company; and the record shows no incident of physical stress or of emotional impact occurring at the race track. The company official who invited claimant to the race track told him he felt it would be " a form of relaxation " and claimant seems to have accepted this evaluation.

The theory of " accident " upon which the board has based its award is not that anything particular did happen at the race track in connection with the work; but rather that the claimant before going to the race track had been following an unusually active schedule in efforts to build up revenues with which he was especially concerned and which had been falling off; that he was worn down by this continued effort and suffered the heart attack as a result.

Although there is a finding by the board that the heart attack was " due to unusual exertion and effort and physical and emotional strain " there is no finding, and there is certainly no proof of, any physical or even emotional strain at the time of its occurrence. The essential finding of the board in this respect is that for five months claimant had been under " great tension " due to the financial losses of the employer; had been called upon " to do considerable traveling ", and to " work longer " with increased mental and physical strain.

This is not a compensable accident, looking at the word " accident " with all the meaning that has been carried to it by administrative and judicial construction. This is not because claimant is an executive. Executives can and do sustain accidents while performing their work. Among other things that

will readily come to mind, they may stumble over a rug, or slip on a floor or get a strain lifting a chair. Nor is this event not an accident because claimant was at a race track; it is to be observed that accidents occur with some frequency at race tracks.

The illness shown in this record is not accidental because no eventful happening can be demonstrated to have caused it; and its only connection with the work is a gradual physical deterioration over a period of time. So settled has been the viewpoint of the Legislature and of the profession that this kind of physical deterioration is not accidental in the sense used in the Workmen's Compensation Law, that diseases growing from employment, but not caused by a definite happening in the work have been placed in a class by themselves, treated as special risks, and given a separate allocation in the compensation structure.

If resort be had to the common sense of the average man, it would be unlikely that the average man would think of claimant's heart attack as the accidental product of a " particular event " in his employment within *Matter of Masse* v. *Robinson Co.* (301 N. Y. 34), which permitted the court to look for assistance to the average man's common sense. But even that definition, by its own terms, required the occurrence, not only of an " event " but, significantly, of a " particular event ". The event intended was not, of course, an entirely intra-organic physical change, since in the purely medical sense any change is regarded as an " event "; but must be a physical happening in the external employment environment operative upon the human organism.

It is true enough that in the development of the theory of industrial accident in heart cases, a policy of marked liberality has been followed. The " catastrophic " nature of an accident (*Matter of Lerner* v. *Rump Bros.*, 241 N. Y. 153, 155) has been very broadly regarded in these cases, but even then the happening of some external event in connection with the work and causing the heart condition has been required.

In *Matter of Kehoe* v. *London Guar. & Acc. Ins. Co.* (278 App. Div. 731) for example, the employee was not engaged in physical work, but had suffered a heart condition for some time and was required in the course of employment to climb a long subway stair involving considerable strain for a man in his condition and died from a heart attack as a result. Although the employee in *Matter of Broderick* v. *Liebmann Breweries* (277 App. Div. 422) was doing his usual physical

labor at the time of his heart attack, he was under physical strain in doing the work and the work that he was then doing in a boiler was under temperatures " above normal ".

The rule of the eventful nature of an accident has been much more rigidly applied to physical consequences other than heart conditions and the theory of the " catastrophic " nature of the accidental event seems in those cases to be applicable. (*Matter of Deyo* v. *Village of Piermont*, 283 App. Div. 67 [1953].)

In both *Matter of Furtardo* v. *American Export Airlines* (274 App. Div. 954) and *Matter of Anderson* v. *New York State Dept. of Labor* (275 App. Div. 1010) on which the board relies, the respective records disclose the heart attacks occurred while the employees were actually engaged in the employment activity which caused the strain; and in each case the employee continued at the same activity after a first attack and suffered another in the work. We do not regard these cases as controlling here or as requiring us to affirm this award.

To affirm this award we must be ready to hold that if a man increases the tension of the administrative work and later suffers a heart attack while at rest, this is a compensable accident. We are not ready to go that far in the case before us.

Whether resort be had to what the average viewpoint of definition would be; or whether reference be had to the more recondite viewpoint of judges; or even on how judges regard what other average men think would be an accident, the result in our view remains the same. An accident is not established on this record.

The award should be reversed and the claim dismissed, with costs to the appellants.

FOSTER, P. J. (dissenting). This is an appeal by an employer and its insurance carrier from a decision of the Workmen's Compensation Board which held that a heart attack suffered by claimant was an industrial accident, and made an award reimbursing the corporate employer, which had paid claimant's salary during the period of his disability, at the maximum compensation rate of $32 a week.

Claimant was employed as a vice-president in charge of revenues by the corporate employer which was engaged in business as a freight forwarder in New York City. He was in California on a business trip and to entertain certain business acquaintances accompanied them to the Santa Anita race track. There he became so ill that he was taken to a hospital where it was found that he had sustained a coronary occlusion with an

infarct of the myocardium. He was disabled for a considerable period of time and during this period was paid a substantial salary by the employer. His full salary was at the rate of $17,000 a year but for a part of the period of disability he was paid on an annual basis of $11,333. Later his full salary was restored. The employer requested reimbursement which was granted by the board at the maximum compensation rate.

The board could find that prior to December, 1948, the employer was in good financial condition, but in that month began to lose money. Thereafter claimant was required to go out and attempt to get lower costs for motor carriers and railroads in order to increase business and this required extraordinary effort. He made many trips to various cities in the east and midwest, and one trip to the Pacific coast. Practically all of his travel was done by airplane because he had to make fast trips in order to keep up with his regular work. Prior to January 1, 1949, he had worked only about seven hours a day, and usually took a couple of days off in each week for recreation. After that date he worked strenuously anywhere from ten to twenty hours a day; and was under a great deal of tension. In fact he had begun to feel the strain before he went to California and complained of feeling tired, but it was insisted that he go there. His work consisted mainly of attending a series of meetings with coemployees, competitors and various municipal organizations.

On the day he suffered the heart attack he arose at 7:00 A.M., had breakfast at 7:30 A.M. and arrived at his local office at 8:00 A.M. He stayed in the office until about 9:15 A.M. conferring with fellow employees, then left for a meeting with others that lasted until noon. He passed up a luncheon engagement in order to get out to the race track with some business acquaintances. It should be added that he was reimbursed by his employer for all the expenses of his trips, and this included any betting losses which he sustained at the track. At the time he was forty-nine years of age, and was somewhat overweight apparently due to his eating habits.

No useful purpose would be served in running the gamut of heart cases from *Matter of Green* v. *Geiger* (280 N. Y. 610) to *Matter of Masse* v. *Robinson Co.* (301 N. Y. 34, 37). The rule we are bound by finally emerged in the *Masse* case: " Whether a particular event was an industrial accident is to be determined, not by any legal definition, but by the common-sense viewpoint of the average man." This test is a rule of law but its application in the majority of cases will ordinarily be in the realm of

fact. In that respect it is clearly akin to the standard of care presented to juries in negligence cases.

Appellant argues "that the award in this case goes beyond the *Masse* case or any other case and is so extreme as to make a travesty of the Workmen's Compensation Law, intended originally to aid working men and their dependents who otherwise would be left in dire financial need." This argument implies an element of social philosophy with which we might be in agreement if we were free to accept it. We have no doubt that the average man might lift his eyebrows at the idea that a high salaried executive would be entitled to compensation under any circumstances but this would be due to the fact that the average man is probably not familiar with the Workmen's Compensation Law as it is written. Where a corporation insures its employees under the Workmen's Compensation Law executive officers are deemed covered, and entitled to same rights and benefits as any employee (Workmen's Compensation Law, § 54, subd. 6). Hence in this claim there is no issue of coverage.

With that element out of the case the claim must be judged by the same tests that would apply to any employee. The proof here indicates that claimant was under unusual physical and mental strain. There is also medical proof to sustain the finding that such unusual effort and strain brought on his heart attack, and it was merely fortuitous that the actual blow fell when he was at a race track, although concededly he was there in the course of his employment. These are the usual concomitant elements which place the stamp of an accident on a heart attack, as exemplified in scores of cases. Given these circumstances, whether an average man would view claimant's heart attack as an industrial accident must be deemed an issue of fact, and the answer of the board to whom such an issue is confided is no better and no worse than that which the courts could give. The courts however have no power to weigh the facts for that function belongs solely to the board. We can only determine whether the board had any reasonable basis to sustain its finding of an accident. (*Matter of Broderick* v. *Liebmann Breweries,* 277 App. Div. 422.) If we eliminate any element of social philosophy that would be hostile to including executives within the benefits of workmen's compensation there is no reason to treat this claim any different than the claim of an ordinary employee would be treated. Viewing the matter in that light we cannot say as a matter of law that the decision of the board was irrational, or that it did not have substantial evidence to sustain it. (*Matter of Furtardo* v. *American Export Airlines,* 274 App.

Div. 954, motion for leave to appeal denied, 298 N. Y. 933; *Matter of Anderson* v. *New York State Dept. of Labor,* 275 App. Div. 1010.)

The award should be affirmed, with costs to the Workmen's Compensation Board.

HALPERN and IMRIE, JJ., concur with BERGAN, J.; FOSTER, P. J., dissents in an opinion, in which ZELLER, J., concurs.

Award reversed and claim dismissed, with costs to the appellants.