10 N.Y.2d 209 (1961)
In the Matter of the Claim of Mary R. Klimas, Appellant
v.
Trans Caribbean Airways, Inc., et al., Respondents. Workmen's Compensation Board, Respondent.
Court of Appeals of the State of New York.
Argued May 15, 1961.
Decided July 7, 1961.
Abraham Markhoff and Harry J. Ruthoser for appellant.
Morgan F. Bisselle and Warren C. Tucker for Trans Caribbean Airways, Inc., and another, respondents.
No appearance for Workmen's Compensation Board, respondent.
Judges DYE, BURKE and FOSTER concur with Judge FROESSEL; Chief Judge DESMOND dissents in an opinion in which Judges FULD and VAN VOORHIS concur.
*211 FROESSEL, J.
Decedent, 33 years old, with no prior known history of heart disease, died on March 10, 1956 of a myocardial infarction. His death occurred eight months after a general checkup  made when applying for his pilot's license  disclosed his physical condition to be essentially normal.
The Appellate Division found that the record contained substantial medical testimony (including that of an impartial specialist) connecting decedent's heart attack to the emotional stress of his work  the "severe and protracted state of emotional upset" which "reached a climax" during the three-day period immediately preceding March 10th; and that this was not challenged by the present respondents.
The facts briefly are as follows: Decedent was the director of maintenance and engineering of the employer, Trans Caribbean Airways, Inc. On November 8, 1955 one of the two planes which the employer had been operating was grounded by the Civil Aeronautics Authority because of corrosion found on one of the wings. The damaged plane was sent to Brownsville, Texas, for repairs. The employer's president attributed the damage to "sheer negligence", and blamed decedent personally therefor. At a company Christmas party, the president made "quite an issue" of this matter; in the presence of a number of persons he told decedent that "he didn't want any amateurs working for him", and that, if the plane was not out of Brownsville by the end of February, "everybody would be looking for a job". Decedent, understandably, became very much upset.
Thereafter, decedent made several trips to Brownsville in connection with the repair work. In addition, he made an unsuccessful trip to California in an attempt to procure the *212 required replacement parts, which he ultimately managed to obtain from another airline in Oklahoma.
On March 3, 1956 decedent was directed to go to Brownsville to bring back the plane. The employer's chief pilot arrived in Brownsville on Wednesday, March 7th, expecting to fly the plane back to New York; however, it was not even near readiness. It was on that Wednesday that decedent was "hit with the bill" for the repairs. The chief pilot, who saw him shortly thereafter, testified that decedent's face was "very white", and that he was much disturbed by the amount  $266,000. In a letter written to his wife the following day, decedent stated that he almost "fell over" when he received the bill, and felt "as if its my money I'm spending".
During the next three days decedent laboriously checked the bill in detail in an attempt to reduce its amount. Although his normal hours were five days a week from 9:00 A.M. to 5:30 P.M., he worked until late at night on Wednesday and Thursday into Friday morning, as well as all day Friday and Saturday morning. He spent many hours, together with Mr. Taylor, a representative of the repair firm, trying to reduce the amount and clear up what he deemed excessive charges in the bill. No progress was made, however, and on the morning of March 10th they "were just driving their heads against a stone wall". Decedent and Mr. Taylor had been having difficulties, and in a telephone call to his wife decedent said he was very much upset that the plane was still not ready, about the extremely high bill, and that he had a lot of people to argue with in an attempt to reduce it. He also stated that his employer's president was going to "blow his stack", and that "there was one fellow down there he was ready to fight with". He was otherwise a very cheerful person, and his wife testified that he sounded much upset and not "like himself".
On Saturday morning, March 10th, decedent was informed that he would have to stay over until at least Monday. He was greatly depressed and aggravated, and, with fear, he communicated with his vice-president in a 40-minute long distance telephone conversation, apparently giving assurances in which he had little hope. Shortly thereafter, he suffered the attack which took his life. In the language of the impartial specialist, "his anxiety was so great throughout that you didn't need much *213 to push it over". The last three-day period was also emphasized by two other doctors as the "climax".
Although the Appellate Division, in reversing the Workmen's Compensation Board, which awarded death benefits in favor of claimant wife and two minor children, noted that there was "substantial medical testimony in this record connecting decedent's heart attack to the emotional stress of his work", it nevertheless reversed and dismissed the claim, holding that in the absence of a showing of "any physical strain" an industrial accident "cannot be made out". We do not agree.
Despite the claim to the contrary, there is ample authority in this court and in the Appellate Division sustaining awards of compensation for physical injuries resulting from mental or emotional strain, where the evidence was clear, and our present decision merely follows those precedents. We think it may not be gainsaid that undue anxiety, strain and mental stress from work are frequently more devastating than a mere physical injury, and the courts have taken cognizance of this fact in sustaining awards where no physical impact was present (Matter of Pickerell v. Schumacher, 242 N.Y. 577; Matter of Furtardo v. American Export Airlines, 274 App. Div. 954, motion for leave to appeal den. 298 N.Y. 933; Matter of Anderson v. New York State Dept. of Labor, 275 App. Div. 1010, motion for leave to appeal den. 300 N.Y. 759; Matter of Church v. County of Westchester, 253 App. Div. 859; Matter of Wachsstock v. Skyview Transp. Co., 279 App. Div. 831, 5 A D 2d 1028; Matter of Krawczyk v. Jefferson Hotel, 278 App. Div. 731; Matter of Thompson v. City of Binghamton, 218 App. Div. 451). While respondents contend that a reversal would "open a new area of liability in heart cases, the bounds of which are limitless", the "area" was in fact opened long since by these cases, among others, which rejected that same argument.
In Matter of Pickerell v. Schumacher (supra) claimant suffered a cerebral apoplexy as a result of fright when his motor vehicle started to roll backwards and the emergency brake failed to hold. We affirmed an award, holding that compensation may be allowed for physical injuries sustained as the result of an accident where the injuries are fright, mental and nervous shock and consequences thereof, without any physical impact or other physical injury.
*214 In the Furtardo case (supra) claimant, 24 years old, was assigned to design and supervise the construction of three shops. The work was considerably harder than his former position and required unusually long hours. During the period August, 1943 to the end of December, 1943, claimant worked 7 days a week, 12 to 14 hours a day, and 3 to 4 hours a night at home in getting the plans ready for the next day. Except for the night work, he continued this schedule until June 10, 1944. He first experienced symptoms of a heart condition in September, 1943, and in October he consulted a company doctor who advised him to take it easy. The pain continued until June, 1944. On June 10th, while at home, he suffered a heart attack which the medical testimony indicated was the result of his overexertion since August, 1943. The board found that the injury was a compensable accident, and the Appellate Division unanimously affirmed. This court denied a motion for leave to appeal.
In the Anderson case (supra) the board found that claimant, a supervising inspector employed by the State Department of Labor, had sustained accidental injuries in the nature of a coronary occlusion at home as the result of the continued anxiety and excessive exertion at work under trying circumstances. Here, too, claimant worked long hours and was under severe pressure and excessive strain for a period of approximately 18 months before the attack. We again denied leave to appeal from the unanimous affirmance by the Appellate Division of the award of compensation.
Matter of Church v. County of Westchester (supra) represents a similar recognition that a fatal heart attack brought on by emotional upset and strain is compensable as an industrial accident. There, the decedent was called as a witness in his employer's behalf during the course of a personal injury action. While the decedent was being vigorously cross-examined, he became agitated and nervous and "fenced with the attorney". The board found that the severe cross-examination subjected the decedent to mental stress which caused him to suffer a coronary occlusion from which he died the same day. The award was upheld by a unanimous Appellate Division over objection that there was no proof of accident or causal relation.
*215 In Matter of Krawczyk v. Jefferson Hotel (supra) decedent, a cook in his employer's hotel, witnessed a fight between two other employees of the hotel. The board found that the quarrel between these two men "caused decedent to suffer from shock and to sustain an emotional upset and strain on the muscles of his heart which resulted in his death on the same day" (278 App. Div. 731). The award was affirmed. (Accord: Matter of Wachsstock v. Skyview Transp. Co., supra [fright]; Matter of Thompson v. City of Binghamton, supra [excitement], relying on Matter of Pickerell v. Schumacher, supra.)
The Appellate Division in the case at bar relied on its former decision in Matter of Lesnik v. National Carloading Corp. (285 App. Div. 649, affd. 309 N.Y. 958), a case which, while superficially similar, is readily distinguishable. There the Appellate Division noted that no "stress is shown"; "the record shows no incident of physical stress or of emotional impact occurring at the race track"; that "there is certainly no proof of, any physical or even emotional strain at the time of its occurrence" (p. 650; emphasis supplied). The medical proof was confusing and uncertain, and was not of the same substantial, virtually conclusive nature as supported the board's determination in the instant case. Moreover, as the Appellate Division also noted in their opinion in the case at bar, Lesnik may be distinguished on the ground that the attack occurred while the claimant was at rest  at the race track  while here "even though the decedent was sitting by a swimming pool he was still in the midst of the very problem, the strain and tension of which the board could [and did] find caused his attack". The Appellate Division in Lesnik made the same distinction when it stated that Furtardo and Anderson were not controlling.
As we review the cases, in none of which there was a physical impact, we cannot help but conclude that the board was right in finding that in this unusual case decedent's death "was accidental within the meaning and scope of the Workmen's Compensation Law; that the accident arose out of and in the course of the employment, and that the death was causally related to such accident". This result is not only amply supported by applicable authorities in this State, which we have reviewed above, but also by a host of decisions in other jurisdictions (see 1 Larson, Workmen's Compensation Law, § 42.21, *216 p. 616; 1960 Supp., pp. 217, 221-223). Upon the facts developed in this record, the common-sense viewpoint of the average man would in our opinion be in accord with the board that this was an industrial accident (Matter of Masse v. Robinson Co., 301 N.Y. 34, 37).
Accordingly, the order appealed from should be reversed and the award to claimant reinstated, with costs.
Chief Judge DESMOND (dissenting).
This is an unprecedented decision. I have not found anywhere a holding by a New York appellate court that anxiety and worry associated with employment constitute without more an accidental injury justifying an award of workmen's compensation because the injury and anxiety has caused physical deterioration. Not only is there no precedent for sustaining this award, but in the strikingly similar case of Matter of Lesnik v. National Carloading Corp. (285 App. Div. 649, affd. 309 N.Y. 958) we held as did the Appellate Division that a heart attack found to have resulted from the mental stresses and worries of a job could not be regarded as an industrial accident.
We have gone far in other heart cases (including the decisions cited in the majority opinion) in sustaining compensation awards where there was proof of definite physical stress and exertion at an ascertainable time, but if we are to go beyond that point and allow compensation to be awarded simply for psychic or nervous strains we will be doing what Judge FINCH warned us of in 1938 in Matter of Goldberg v. 954 Marcy Corp. (276 N.Y. 313). We will "make workmen's compensation the equivalent of life and health insurance" (p. 317). From its earliest days the statute has carefully distinguished between diseases on the one hand and accidental injuries on the other, although a limited number only of specially classified "occupational diseases", not including cardiac ills, were made compensable. Aside from that special list, no idiopathic disease has ever, so far as I know, been held compensable. The heart cases are not authority to the contrary since every decision in this court affirming a compensation award for a heart disability or death is based on a finding that the heart disease was traumatic in the sense of being caused by physical exertion.
There is some justification for the decisions in other States which award compensation for disability resulting from sudden *217 and severe shock during work (see, for instance, Bailey v. American Gen. Ins. Co., 154 Tex. 430; Bekelski v. Neal Co., 141 Neb. 657; Montgomery v. State Compensation Comr., 116 W. Va. 44). An extreme shock or fright directly caused by some work incident may have an effect equivalent to that of a physical blow. But there is nothing like that in this case. The decedent here was worried because inefficient care of his employer's plane was being ascribed to him, and he was fearful that the financial loss resulting therefrom might cause him to lose his position. Such mental or nervous stresses are of a totally different character from the work-related physical injuries covered by workmen's compensation systems. A court, in my opinion, goes far beyond its powers in stretching the Act to cover what is essentially the result of the customary stress and strain of life, not an "accident" or a "physical injury" although in a sense it arises "out of employment".
Thousands of litigants have attempted their own interpretations of Chief Judge LOUGHRAN'S famous statement in Matter of Masse v. Robinson Co. (301 N.Y. 35): "Whether a particular event was an industrial accident is to be determined, not by any legal definition, but by the common-sense viewpoint of the average man" (p. 37). For myself, I cannot imagine any average man considering this an accident. But, beyond that, what this court was saying in Masse was that accidental causation cannot be ruled out in a case within the general intendment of the compensation law simply by showing the absence of some traditional element of the common-law definition of "accident" such as "identified in space or time" or "catastrophic or extraordinary", etc. But there still must be an "industrial accident" in some real, objective sense. The Masse opinion itself recites that the employee "whose work had long been physically hard, was subjected to unusual strain and exertion during the working hours in the week that ended April 15, 1947." I do not think his claim would have been upheld on a showing that he had been worrying more than usual.
The Workmen's Compensation Act was enacted in 1914 and its basic definitions and meaning have never been changed (see, as to "worry", Matter of O'Connell v. Adirondack Elec. Power Corp., 193 App. Div. 582 [1920]). When the Legislature wished to make a limited provision for nonaccidental, nonoccupational *218 illnesses of employees, it enacted in 1949 the "Disability Benefits Law". The courts should leave to the Legislature any other such extensions.
The order should be affirmed.
Order reversed, with costs in this court and in the Appellate Division, against respondents employer and carrier, and the award of the Workmen's Compensation Board reinstated.