**HARTFORD ACCIDENT AND INDEMNI-
TY COMPANY, Appellant,**

v.

**Roger M. OLSON, Appellee.**

**No. 6124.**

Court of Civil Appeals of Texas,
El Paso.

Jan. 20, 1971.

Rehearing Denied May 5, 1971.

Shafer, Gilliland, Davis, Bunton & Mc-Collum, Elton Gilliland, Odessa, for appellant.

Calvin W. Wesch, Kermit, for appellee.

OPINION

WARD, Justice.

This is a workman's compensation case. The trial before a jury resulted in a judgment awarding appellee benefits for total and permanent disability. This is a heart attack case. Mental stimulus was the cause of the attack, and excessive physical strain is not involved.

The claimant, Roger Olson, was forty-six years of age at the time of the heart attack and had been in good health all of his working life, which was as a general oil field laborer. In 1961 he started working in the more technical position of a well logger. That job ordinarily requires that the logger catch, wash and describe drill cuttings, after which an accurate report of the findings is made. The work is usually done in a trailer-house at the oil well site. For over three years Mr. Olson, the claimant, had been working for Permian Logging Company, and on February 27, 1968 he was called upon to replace his superior on a well in Ward County, and he worked there for a total of nine days. To establish the causal connection, Mr. Olson testified that the well was being drilled into a formation at a depth of about 8,000 feet and was at the time in a non-producing zone. This formation was logged by Olson as anhydrite, and on March 4th, at the insistence of the operator of the well, the claimant's superior advised him to change the classification of the formation to Delaware Sand. Olson agreed to do as instructed and, as a result, was required to go back and change several hundred feet of log. This disturbed Olson as he felt it reflected on his professional ability, and it made him upset and very nervous, as a wrong call could affect future employment. It bothered him to the extent that he had a sample of the cuttings examined by an independent geologist who, in turn, confirmed Olson's belief that ·he had made a correct call. This did not produce any vis-ible outburst on the part of Mr. Olson, but the annoyance remained on his mind, both at his home and at his work, until the time of his heart attack.

The next incident in the chain of causal connection occurred during the night of March 20th, when he was at the site of a well in Andrews County. There, a sink in the trailer-house where he was working stopped up, as a fork had been lost down the drainpipe of the sink, and the fork and cuttings from the well caused the drain to clog. Olson took the lines loose and attempted to clean them out while keeping up with his work. This was exasperating work, but no physical strain was involved, although the occurrence did leave him emotionally upset.

The next occurrence of causal connection occurred during the night of March 22nd, when the incoming cuttings line stopped up. No unusual problem was involved in clearing the line, but it was an exasperating situation. Again, no physical strain was involved in correcting the defect.

During the period of time that Mr. Olson was working in Andrews County, a gas detection device, a chromatograph, did not function properly and, although he complained about it and even attempted to adjust it himself, it was never repaired. This was a constant annoyance and disturbed Mr. Olson, as it could seriously affect the accuracy of his logging report.

On the morning of March 23rd, and while working, Mr. Olson suffered his heart attack, a coronary occlusion, resulting in an acute posterior myocardial infarction. He was immediately hospitalized where he remained until April 8th, and was not permitted to return to any form of work for over a year. There is no question but that the claimant, Mr. Olson, had a heart attack on the job site. The only claim made is that mental stimulus arising from a series of exasperating experiences on the job over a period of nineteen days caused the heart attack.

To eliminate one method of disposing of cases of this type, we will first pass on the "no evidence" and "insufficient evidence" points in regard to the causal connection evidence between the job-connected mental stimulus and the heart attack. An examination of the facts in this case would not support the appellee's contention under the first two alternatives outlined in Lenger v. Physician's General Hospital, Inc., 455 S.W.2d 703 at p. 706 (Tex.1970), but this case is supported under the last alternative of probable causal relationship as developed by expert testimony. Undoubtedly, with the weak factual circumstances represented in this case as to causation, medical possibility testimony will not be sufficient, as was permitted in the heart attack workman's compensation case of Insurance Company of North America v. Kneten, 440 S.W.2d 52 (Tex.1969). Here, we first consider the rule stated in Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex.1966): "Reasonable probability * * * is determinable by consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase." The medical testimony produced by the claimant in the present case was centered around the hypothetical question and the doctor, in no uncertain terms, testified on direct examination that in his opinion the emotional stress and strain from the work that Olson was under at the time, as well as his long working hours, precipitated or caused his coronary occlusion. While this positiveness was somewhat weakened on cross-examination, we feel that the medical testimony as a whole was of the grade of reasonable medical probability, and not mere medical possibility. Therefore, having considered the point of legal insufficiency, which raises the question of law, and having considered only the evidence and the inferences therefrom tending to support the findings of causal connection evidence, the no evidence point is overruled. Also, having considered all of the evidence and reasonable inferences arising therefrom, the factual insufficiency points are overruled on the findings of medical causal connection.

This brings us to the main point of the case. To permit workman's compensation recovery in a case of this type, says the appellant, would require the Workmen's Compensation Act to provide for a form of mental and physical health insurance; and this recovery would open a new area of liability in heart cases, the bounds of which are limitless. On the other hand, says the appellee, and considering the purpose of the Act, it cannot be gainsaid that undue anxiety, strain and mental stress from work are frequently more devastating than a mere physical injury, and Texas was among the first to take cognizance of this fact in sustaining awards where no physical impact was present.

Regardless of language in earlier cases, it seems to be fairly settled that there is nothing in the Workmen's Compensation Act which requires that the injury be the result of an accident. Aetna Insurance Company v. Hart, 315 S.W.2d 169 (Tex.Civ.App.1958, wr. ref. n. r. e.); Texas Employers Ins. Ass'n v. Agan, Tex.Civ. App., 252 S.W.2d 743 (wr. ref.); IX Baylor Law Review, pp. 145–165. As stated in the Hart case:

"We think the effect of the many decisions is that if an injury is shown to have been received by an employee while he is acting within the course of his employment and such injury is the result of a risk or hazard of the employment, it is compensable under the Workmen's Compensation Act."

The test applied is that with the accidental injury or industrial accident, there be an undesigned, untoward event traceable to a definite time and place involving a risk of the employment. Solomon v. Massachusetts Bonding and Insurance Co., 347 S. W.2d 17 (Tex.Civ.App.1961, wr. ref.). Such test has been used in the injuries to the nervous system. In the Hart case, su-

pra, it was the laundry employee berated by the customer; in Bailey v. American General Insurance Company, 154 Tex. 430, 279 S.W.2d 315 (1955), for the mental and nervous shock following the minor physical injury, but accompanied by seeing the fellow employee fall to his death. In Travelers Insurance Company v. Garcia, by this court, 417 S.W.2d 630 (1967, wr. ref. n. r. e.), where the claimant sustained a mental ailment bordering on psychosis after she was the victim of an armed robbery. Without belaboring the point any farther, an examination of the cases that deal with injuries resulting from shock, fright and other conditions not of traumatic origin, seem to require that there be more of a direct causal connection in that the injury was immediate, substantial, and obviously connected with the incident. The incident has been one which would have a substantial impact upon the nervous system of any person connected therewith, or an observer thereof.

We recognize that a heart attack caused by a strain or overexertion is an accidental injury to the physical structure of the body within the meaning of the Workmen's Compensation law, and proof thereof, occurring in the course of employment, is sufficient to show a causal connection between injury and the death or disability resulting therefrom. Midwestern Insurance Company v. Wagner, 370 S.W.2d 779 (Tex.Civ.App. Eastland, 1963, wr. ref. n. r. e.); Aetna Casualty & Surety Company v. Scruggs, 413 S.W.2d 416 (Tex. Civ.App. Corpus Christi 1967, no writ hist.). But again, strain is not involved in this case. It is merely mental stimulus, and the case approaches the situation in Frazier v. Employers Mutual Casualty Company, 368 S.W.2d 955 (Tex.Civ.App. Austin 1963, wr. ref. n. r. e.), though admittedly that was held to be an occupational disease case.

Somewhat similar are the heat-stroke or heat exhaustion cases, where the claimant has the burden of showing by competent evidence that at the time of the stroke, the claimant was engaged in the performance of duties that subjected him to a greater hazard than ordinarily applies to the general public. Weicher v. Insurance Company of North America, 434 S. W.2d 104 (Tex.1958). It seems obvious that the incidents advanced here as causing the heart attack are no more than the usual differences and irritations—the stresses and strains—that are apparent in every-day living, as well as in employment. Even the cases which cite Klimas v. Trans Caribbean Airways, Inc., 10 N.Y.2d 209, 219 N.Y.S.2d 14, 176 N.E.2d 714, Court of Appeals of New York, 1961, do not approach the appellee's position in this case. Regardless of the liberal construction of the Workmen's Compensation Act in favor of the workman, of the purpose of the Act to place on the shoulders of industry the expense incident to the hazard, and with sympathy for the workman and his family, there is still no basis upon which to convert the statute into employees' health insurance, which we would have to do to affirm this case. We are making this statement aware that we are not producing an exact legal test that can be applied at all times. We regret this, but the courts are having this problem universally when they attempt to draw the line in heart cases. The appellant's points presenting this matter are sustained.

The case was presented to the jury under the same form of submission as presented in the case of Aetna Insurance Company v. Hart, supra. The appellant's objections to the charge were to the effect that this type of submission failed to reach the essential causation question as to whether the mental stimulus, or exasperation on the part of the appellee, produced the heart attack. In view of our disposition of the case, these points are not passed upon.

The judgment of the trial court is reversed and judgment is here rendered that the appellee herein take nothing.

RAMSEY, C. J., not sitting.