PASTALENIEC v THE GREAT A & P TEA COMPANY, INC

1. Workmen's Compensation—Mental Disability—Causation—Question of Facts—Appeal and Error.

The finding of a causal connection between a work-related injury and mental or emotional disability is a question of fact for the Workmen's Compensation Department and such a finding made by the Workmen's Compensation Appeal Board is conclusive in the absence of fraud where there is any evidence in the record to support the finding (Const 1963, art 6, § 28; MCLA 418.861).

2. Workmen's Compensation—Total Disability—Incurable Insanity.

An employee is incurably insane for purposes of the Workmen's Compensation Act if the occupationally related mental or emotional illness which impairs the employee's mental processes is of totally disabling proportions and is likely to be of long and indefinite duration, thus making gainful employment impossible.

3. Workmen's Compensation—Incurable Insanity—Second Injury Fund—Appeal and Error.

The Court of Appeals will not restrict its definition of incurable insanity for purposes of the Workmen's Compensation Act merely because the Second Injury Fund has found itself subject to more petitions alleging incurable insanity.

Appeal from the Workmen's Compensation Appeal Board. Submitted Division 1 March 15, 1973, at Detroit. (Docket No. 14960.) Decided September 26, 1973. Leave to appeal applied for.

Application by Joseph Pastaleniec for hearing and adjustment of a workmen's compensation claim against his employer, The Great A & P Tea

References for Points in Headnotes
[1–3] 58 Am Jur, Workmen's Compensation § 250.
[3] 58 Am Jur, Workmen's Compensation § 296.

Company, Inc., and the Second Injury Fund. Applicant awarded benefits for total and permanent disability. Defendant employer appeals. Affirmed.

*Kelman, Loria, Downing & Schneider,* for plaintiff.

*Lacey & Jones* (by *Hayim I. Gross*), for defendant The Great A & P Tea Co., Inc.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *A. C. Stoddard* and *Eileen D. Zielesch,* Assistants Attorney General, for defendant Second Injury Fund.

Before: Fitzgerald, P. J., and V. J. Brennan and O'Hara,* JJ.

Fitzgerald, P. J. The Great A & P Tea Company, Inc, appeals from an opinion and order of the Workmen's Compensation Appeal Board which affirmed a referee's award of compensation benefits to plaintiff for permanent and total disability caused by incurable insanity pursuant to § 10(b)(6) of the former act, MCLA 412.10(b)(6); MSA 17.160(b)(6).[1]

Plaintiff was born March 15, 1917. He left school about the tenth grade and in 1936 began working as a plumber's assistant under the guidance of a Mr. Kaufman, a Detroit plumber.

Plaintiff worked happily for Mr. Kaufman as a plumber journeyman for about 24 years, except for a hitch in the Army during World War II.

In 1960, Mr. Kaufman died and the business was

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] *See currently* Workmen's Compensation Act of 1969, MCLA 418.361(2)(f); MSA 17.237(361)(2)(f).

discontinued. Plaintiff went to work for the Great A & P Tea Company, Inc., and worked for 2-1/2 years in salvage. He was then transferred to a railroad car unloading job at the company's warehouse. About two weeks later, on March 28, 1963, plaintiff injured himself when he fell from a ramp which was placed between the loading dock and a railroad car. The ramp slipped off the railroad car and plaintiff fell about three feet to concrete pavement. The ramp fell on his back. Plaintiff lost about two weeks of work, returned for one day and for one hour on a second day and then quit because of inability to work or was fired for allegedly drinking on the job.

The company voluntarily paid compensation benefits of $36 per week for 154 weeks from March 29, 1963 to March 12, 1966.

On September 10, 1965, plaintiff filed an application for hearing which alleged permanent and total disability from psychiatric disorders. Plaintiff claimed that the accident and the resulting pain to his back and shoulders caused nervousness and anxiety to such an extent that he was unable to return to gainful employment.

Following hearing, the referee awarded compensation benefits for permanent and total disability, finding:

"We are convinced from the record that the episode of March 28, 1963, constituted the trigger which set in motion an active psychotic process, with depressive components, which has since disabled plaintiff from return to common labor. Any underlying problems which he may have previously had and had been able to master were translated into active disability by the traumatic incident. We are also satisfied that the increase in his drinking to the point of acute alcoholism at times after the injury is likewise related.

"His psychotic condition equates with insanity."

On appeal, the appeal board affirmed, quoting in an opinion the referee's opinion in its entirety and adding:

"The referee's opinion coincides with the record in this cause. Plaintiff's condition meets the definition of incurable insanity as detailed in the Court of Appeals' opinion in the case of *Raymond Sprute v Herlihy Mid-Continent Co, Bituminous Casualty Co, and Second Injury Fund,* 32 Mich App 574; 189 NW2d 89 (1971).

"There is no question that plaintiff's mental condition was tuned by many factors not related to plaintiff's employment; it is clear that his mental illness was affected and worsened by the injury he sustained while at work loading trucks on March 28, 1963. Plaintiff's work record of one day and one hour two weeks after injury and none since is persuasive."

Other factors important to an understanding of this case include the fact that plaintiff married for the first time on October 7, 1960 to a woman he had known and dated for some ten years. Except for his time in the army, plaintiff lived all of his life with his mother in his mother's house and continued to live there with his mother and his wife after his marriage.

Following the injury, plaintiff began drinking and was hospitalized on a number of occasions for problems relating to his drinking and emotional difficulties. His hospitalization for those problems included a 75-day commitment to the Northville State Hospital by probate court order in 1965.

While the appeal to the appeal board was pending, plaintiff died and his wife, the administratrix of his estate, was substituted as party plaintiff.

On appeal, The Great A & P Tea Company does not directly oppose the board's finding that plaintiff was incurably insane, but contends that the

incapacity did not result from an injury arising out of and in the course of plaintiff's employment.

The gist of the problem on appeal is contained in the testimony of the two psychiatrists presented by the parties.

Dr. Richard Komisaruk testified on plaintiff's behalf. Dr. Komisaruk's diagnosis of plaintiff was that he had a "severe depressive illness, probably psychotic with hypochondriasis and possible alcoholism". He described plaintiff's mental problem as follows:

"The main complaints that this patient has at present are largely psychological in nature. He complains of being 'weak as a cat.' His back has been persistently sore and uncomfortable; this pain is relieved only partially when his mother rubs his back with alcohol. He also complains of marked anxiety and 'nervousness', as well as severe insomnia to the extent that he is able to sleep only three to four hours per night. In addition, there has been a loss of libido. Mr. Pastaleniec expresses concern that his wife, whom he married late in life, will lose interest in him because of his inability to attend to her sexual needs. Generally, Mr. Pastaleniec presents as a very dependent, depressed person. His self-esteem is at a remarkable low. * * * At several points during the interview he was close to tears, particularly when he spoke of his father whom he revered very highly * * * and his late employer, a Mr. Jack W. Kaufman for whom he had worked as a plumber for 25 years. Since Mr. Kaufman died, Mr. Pastaleniec has been unable to work as a plumber and, in fact, took on the work of a loader for the A & P Company as if in a ritual of self-abnegation. This apparent retrogression and the type of employment that Mr. Pastaleniec sought is characteristic of his personality conflicts.

"Further exploration of the psychological history indicates that Mr. Pastaleniec has functioned as an obsessive-compulsive character for many years. His standards of ethics are very high to the point of rigidity.

His choice of employment as a plumber has psychodynamic implications as to the level of psychosexual development at which the neurotic fixations occurred. There is a history of strong attachment to both parents as well as the employer and the latter's wife. * * * Mr. Pastaleniec has been unable to differentiate himself from his family. However, the feelings which bind him to the family and its surrogates are highly ambivalent. Consequently, when he went into mourning for his employer [Kaufman] the kind of pathologic picture which we now see began to develop. In short, Mr. Pastaleniec is an obsessive-compulsive character whose defenses failed at a critical point in his life as a result of which a severe neurotic depression has developed."

Dr. Komisaruk related plaintiff's condition to his employment in the following words:

"Under the circumstances, this man would have been a 'sitting duck' for the kind of injury which he sustained. It was almost as if he had an unconscious need to be injured, as if this would help to absolve his enormous guilt. The psychological need to be injured could also serve to impede the healing process and to complicate the physical manifestations of the injury with the various psychiatric complaints with which Mr. Pastaleniec is ridden.

* * *

"As to the relationship of the injury to the present problems, my impression is that the injury created a focus for the already existent depression. I am inclined to think that the depression would have become more manifest regardless of the injury, but that the specific back complaints which form a large part of the overall picture might well not have arisen were it not for the accident. I further feel that the slow healing of the injury is associated with the psychological problems and is compatible with the kind of personality constellation which we see in Mr. Pastaleniec."

Defendant's psychiatrist Gordon R. Forrer agreed with Dr. Komisaruk's diagnosis on a num-

ber of points. He agreed that plaintiff manifested a borderline psychotic reaction and that plaintiff had a passive-dependent personality. Dr. Forrer also noted that plaintiff considered his former employer, Mr. Kaufman, a surrogate father and Kaufman's death was a blow to plaintiff's already unstable psychic state. Both doctors agreed that plaintiff was not malingering; that he manifested no conscious effort to deceive.

However, Dr. Forrer did not think that plaintiff's condition was related to his fall and injury on the job. He testified:

"The fall and injury, for which no physical basis for his complaints can apparently be found, serves to legitimatize the patient's claim of incapacity. * * * In my opinion the injury was of no significant consequence in producing the borderline psychotic reaction which this man displays.

* * *

"Now, in my opinion it is not possible to conceive of such a twisted attitude [of plaintiff] being caused by, augmented or formed from a fall.

* * *

"I think that there is an understandable retrospective falsification in this matter and that the event of the fall serves as an honorable excuse for his sexual inadequacy.

* * *

"I find no evidence of psychological impairment that can in any way or degree be placed in a cause and effect relationship to the accident."

The finding of a causal connection between a work-related injury and mental or emotional disability is a question of fact for the Workmen's Compensation Department. *Carter v General Motors Corp,* 361 Mich 577; 106 NW2d 105 (1960). Findings of fact made by the appeal board are

conclusive in the absence of fraud. Const 1963, art 6, § 28; MCLA 418.861; MSA 17.237(861). There is evidence in this record to support the appeal board's finding that plaintiff was permanently and totally disabled because of incurable insanity. The record is best characterized in that respect in the opinion of the referee:

"The fact is that, accepting these and other clues pointing to the existence of a personality pattern which does not equate with a psychiatrist's definition of the norm, plaintiff nevertheless presented a record prior to his injury of steady and conscientious work habits not only as a plumber but as a salvage worker in the employment of the defendant for over 2 years immediately preceding his injury. Although there is indication, from a diagnosis of minimal cirrhosis of the liver reached in his first hospitalization approximately a month after his injury of March 28, 1963, that he was a heavy drinker, there is no evidence to the effect that his drinking habits interfered with his work function.

"Subsequent to his injury, on the other hand, we find a man who has had a number of acute alcoholic episodes which required hospitalization and continued inability to function because of complaints of back discomfort and nervousness which are accepted by both psychiatrists as sincere and free from suspicion of any component of malingering.

"We are convinced from the record that the episode of March 28, 1963, constituted the trigger which set in motion an active psychotic process, with depressive components, which has since disabled plaintiff from returning to common labor. Any underlying problems which he may have previously had and had been able to master were translated into active disability by the traumatic incident."

All of the parties agree that the plaintiff was, in fact, a conscientious worker up until he was injured. All the parties agree that the appellee's physical injury did have some effect upon the

emotional mental stability of the plaintiff. The only point at which the parties disagree and the testimony conflicts is in estimating the degree of relationship between the already existent emotional and mental disorders and the physical injury.

However, the referee and the appeal board resolved this conflict in favor of the plaintiff, and there is substantial evidence to support this finding of causation.

In regard to the standard review in workmen's compensation cases in relation to findings of fact, it has been held:

"This Court may not set aside findings of fact of the Workmen's Compensation Appeal Board if those findings are supported by *any* evidence on the record." *Hayes v Revere Copper and Brass, Inc,* 43 Mich App 685, 686; 204 NW2d 695, 696 (1972).

Const 1963, art 6, § 28 provides in part:

"Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law."

See, also, MCLA 418.861; MSA 17.237(861) which also provides for the conclusiveness of findings of fact in the absence of fraud.

The defendant, A & P Tea Company, does not claim fraud. Therefore, our inquiry is limited to determining if there was any evidence to support the findings of fact of the appeal board.

The appeal board merely adopted the memorandum opinion of the referee.

The referee found in part:

"We concur in the position of the defense that plaintiff had underlying emotional problems prior to his

assuming employment with the defendant in 1960.
* * * The fact is that, accepting these and other clues
pointing to the existence of a personality pattern which
does not equate with a psychiatrist's definition of the
norm, plaintiff nevertheless presents a record prior to
his injury of steady and conscientious work habits not
only as a plumber but as a salvage worker in the
employment of the defendant for over two years imme-
diately preceding his injury. * * *

"Subsequent to his injury, on the other hand, we find
a man who has had a number of acute alcoholic epi-
sodes which required hospitalization and continued ina-
bility to function because of complaints of back discom-
fort and nervousness which are accepted by both psychi-
atrists as sincere and free from suspicion of any compo-
nent of malingering.

"We are convinced from the record that the episode
of March 28, 1963, constituted the trigger which set in
motion an active psychotic process, with depressive
components, which has since disabled plaintiff from
return to common labor. Any underlying problems
which he may have previously had and had been able
to master were translated into active disability by the
traumatic incident. We are also satisfied that the in-
crease in his drinking to the point of acute alcoholism
at times after the injury is likewise related."

Ordinarily, it would be sufficient to conclude
that there was evidence in the record to support
the appeal board's finding of a causal connection
between the job injury and permanent and total
disability because of a mental or emotional condi-
tion. However, this case calls for further considera-
tion of the appeal board's application of the rule of
incurable insanity which this Court set out in
*Sprute v Herlihy Mid-Continent Co, supra* (p 579;
189 NW2d at 92):

"An employee is incurably insane * * * if the occupa-
tionally-related mental or emotional illness which im-
pairs the employee's mental processes is of totally

disabling proportions and is likely to be of long and indefinite duration, thus making gainful employment impossible."

The Court in *Sprute* stated (pp 578–579; 189 NW2d at 91):

"Having rejected the *Borg* [1969 WCABO 1246, 1258] test for incurable insanity as being too restrictive, we shall attempt to formulate a test to be used in future cases. In providing a test for incurable insanity under the Workmen's Compensation Act, we believe that the best approach is to present a broad definition, consistent with the basic principle that the employee's disabling condition make him unfit for employment. Such a test would be designed to permit the fact finder to allow compensation only when the injury has affected the employee's mental capacity to the extent that it precludes him from gainful employment."

Clearly, the plaintiff could very easily be encompassed by the *Sprute* definition of incurable insanity.

The only reason that the appellant advances for requesting that this Court restrict the definition of incurable insanity is that:

"the Fund has been named a party defendant to an increasing number of petitions alleging permanent and total disability benefits for emotional or neurotic conditions."

This Court will not restrict the definition of incurable insanity as detailed in *Sprute* merely because the fund has found itself subject to more petitions alleging incurable insanity.

It is important to note that leave to appeal was denied in *Sprute* at 385 Mich 784 (1971). With this fact in mind, and also the fact that the appellant could only advance a nonpersuasive argument for limiting the holding in *Sprute,* this Court reaffirms

the definition of incurable insanity as related in
*Sprute v Herlihy Mid-Continent Co, supra.*

Affirmed. Costs to appellee.

All concurred.