LAURA L. LILLY

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER *and*

CHARLESTON GARMENT COMPANY

(No. 13617)

Decided June 1, 1976.

*Edward G. Atkins* for appellant.

*George G. Guthrie, Spilman, Thomas, Battle & Kloster-meyer*, for appellees.

CAPLAN, JUSTICE:

This workmen's compensation appeal presents a question novel to our jurisdiction. Can a claim for workmen's compensation benefits predicated upon a back injury alleged to have occurred over a period of time as a result of the claimant's employment be considered an occupational disease under the provisions of *W. Va. Code*, 1931, 23-4-1, as amended?

The claimant, Laura A. Lilly, was employed by the Charleston Garment Company, a subsidiary of Bobbie Brooks, a manufacturer of ladies clothing. Her principal duties consisted of sewing certain garments during which she was required to lift bundles of pants weighing up to twenty-five pounds per bundle. In addition to lifting these bundles this duty required a twisting motion of her body from four to ten times per hour.

Mrs. Lilly began to work for Charleston Garment Company in July, 1972. During the early fall of that year she began to suffer pains in her lower back and from Thanksgiving through Christmas the pains became so extreme that she was unable to stand in any comfort. On January 2, 1973, during a consultation with Dr. Jordan, a chiropractor, the claimant told him about her job

and lifting activities that were required in such work. Dr. Jordan told her that she "most likely" hurt her back at work and asked her if she had applied for workmen's compensation. He did not advise her to so apply but told her that if she so desired his nurse would assist her in completing her application. When she told the nurse that she could not designate any particular date upon which she was injured the nurse informed her that she would have to specify a date of injury in order to successfully complete the application. December 19, 1972 having been the last date upon which she was engaged in the lifting and twisting motion described above, that date was designated in her application as the date of injury. Thereafter she was treated several times by Dr. Jordan for this back condition.

The claim was filed and by order dated March 9, 1973 the workmen's compensation commissioner held the claim compensable. This ruling was protested by the employer. Subsequently, as a result of such protest, a hearing was set for January 18, 1974. At that hearing the claimant related in detail the duties of her employment and described the lifting and twisting motion required of her body in placing the clothes at a designated place after she had sewed them. She testified that she had received no single injury at any specific time but that the back condition of which she now complains developed gradually over a period of time. In answer to a question as to when she suffered this injury she said: "It was sort of like a gradual thing. It kept getting worse and worse." Upon being asked "What part of your back is bothering you?" She replied "It's the lower part, down below my waist, right in the very back part . . . . It's an ache. The pains go down through my legs."

She related during her testimony that she had told her supervisor and the service girl with whom she worked that she had hurt her back. She further testified that she had not had any previous back injuries nor had she had any accident or injury of any kind to her back. During that hearing it became apparent to the claim-

ant's attorney that she had not suffered an injury as the result of a single, fortuitous, isolated event and he moved the commissioner to consider the claimant's application as one for an occupational disease.

By an order dated August 29, 1974 the commissioner set aside his former order of compensability and held that any disability suffered by the claimant was not due to an injury received in the course of or as a result of her employment. No mention of the claimant's motion to treat the condition as an occupational disease was made by the commissioner or by the appeal board. This motion has been totally ignored. Upon appeal of the commissioner's order to the workmen's compensation appeal board the commissioner's order of August 29 was affirmed.

Although neither the commissioner nor the appeal board indicated that occupational disease was even considered, it is the position of the employer on this appeal that a back injury may not be considered as an occupational disease. The employer nonetheless concedes that this is a novel question in this Court and that in the few jurisdictions where this question has been considered, a back injury was determined to be an occupational disease under the applicable workmen's compensation statute. It is, of course, the position of the claimant that the claim is compensable as an occupational disease and that there is sufficient evidence to support such compensability.

The question upon this appeal is whether this claim is compensable and, if so, whether the disability alleged in this case constitutes an occupational disease under the workmen's compensation law. We are not concerned at this time with a disability rating, which, if any, if the claim is held to be compensable, will be determined in further proceedings.

The sole requirement for compensability under our workmen's compensation law is that an employee shall "have received personal injuries in the course of and

resulting from their covered employment." *W. Va. Code*, 23-4-1, as amended. Personal injury includes an occupational disease, as demonstrated by the following language of that statute: "For the purposes of this chapter the terms 'injury' and 'personal injury' shall include . . . occupational disease . . . ."

The evidence in the record of the instant case conclusively shows that the back injury of which the claimant complains was received in the course of and resulted from her covered employment. She testified, and it is not disputed, that she had not suffered any previous injuries to her back. Her testimony further revealed that the duties of her employment required a constant and repeated lifting and twisting motion; that the bundles she had to lift weighed up to twenty-five pounds; and that such lifting took place up to ten times per hour.

Although on her application for compensation she designated December 19, 1972 as the date of her injury, she stated her back condition did not result from any isolated event. In response to a question as to when the injury occurred, she replied: "Not on that certain date. It was sort of like a gradual thing. It kept getting worse and worse." She explained that she had designated the above date because she had been advised by Dr. Jordan's nurse that she must state a definite date of injury.

The report of C. M. Caudill, M.D., to whom claimant was referred at the request of the employer, was inconclusive. From his examination and from the history given him by the claimant, Dr. Caudill indicated that a "ruptured lumbar disc could develop in this fashion." He further suggested that she be referred to an orthopedic surgeon for an opinion as to "whether a chronic strain could be brought on by the repetitive twisting, lifting sort of action that she describes as an *intrical* [sic] part of her job."

The claimant was referred to Harold H. Kuhn, M.D., an orthopedic surgeon, who examined her on August 21, 1973. He noted, as his impression upon examination,

that she suffered from lumbosacral strain and myofascial strain. In his letter to claimant's counsel, dated October 10, 1973, he said: "Certainly repeated bouts of lifting could produce the condition we see in this patient's back."

There having been no single, isolated, fortuitous occurrence resulting in injury to the claimant, we are now called upon to determine whether or not the back injury or ailment complained of here may properly be considered as an occupational disease.

*W. Va. Code*, 23-4-1, *as amended*, provides:

> For the purposes of this chapter, occupational disease means a disease incurred in the course of and resulting from employment ... Except in the case of occupational pneumoconiosis, a disease shall be deemed to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances (1) that there is a direct causal connection between the conditions under which work is performed and the occupational disease, (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, (3) that it can be fairly traced to the employment as the proximate cause, (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment, (5) that it is incidental to the character of the business and not independent of the relation of employer and employee, and (6) that it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

Upon examination of the record and in accordance with the decisions hereinafter noted, we are of the opinion that the back condition of which the claimant complains was incurred in the course of and as a result of

her employment and that it constitutes an occupational disease within the contemplation of the above quoted statute. In support of its position that a back injury may not be considered an occupational disease the employer cites *Montgomery v. State Compensation Commissioner*, 116 W. Va. 44, 178 S.E.425 (1935). That case does not involve a back injury but holds that one who suffered shock, exhaustion and other conditions not of a traumatic origin, as a result of having been lost in a coal mine for more than seven days, received a personal injury within the meaning of *W. Va. Code*, 23-4-1, 1931. The seven-day period, said the Court, was the "specific and definite event" which produced the injury.

In the instant case as in *Montgomery, supra*, the cause of the "personal injury" was not a single traumatic event. Rather, it was a situation that developed over a period of time, resulting in impairment of the physical condition of the claimant. Such body impairment or ailment satisfies the definition of disease. Webster's New International Dictionary (2nd Ed. 1955).

It was held in *Fruehauf Corp. v. Workmen's Compensation Appeals Board*, 68 Cal. Rptr. 164, 440 P.2d 236 (1968) that a repeated series of traumas to an employee's back which were cumulative in nature and finally culminated in disability constituted an occupational disease. There, the claimant's employment required repeated lifting, twisting and stooping, resulting eventually in a back condition which necessitated an operation. This occupational disease was deemed to have occurred when the ascertainable disability became manifest. The California court noted that this must be considered an occupational disease so as to be a personal injury under the workmen's compensation law. If it were not so treated, said that court, the claim would be barred by the statute. It then said: "This construction of the limitations provisions in the workmen's compensation law is consistent with the rules of liberal construction required in interpreting that law." *See, Buchanan v. Bethlehem Steel Company*, 302 N.Y. 848, 100 N.E.2d 45 (1951); *Underwood*

*v. National Motor Castings Division*, 329 Mich. 273, 45 N.W.2d 286 (1951); *Bondar v. Simmons Co.*, 23 N.J.Super. 109, 92 A.2d 642 (1952).

We concur in the thoughts expressed and the principles enunciated by the authorities quoted and cited above. Accordingly, we hold that the back injury suffered by the claimant, Laura L. Lilly, constitutes an occupational disease within the contemplation of *W. Va. Code*, 23-4-1, *as amended*, and that it occurred in the course of and as a result of her employment; that there is a direct causal connection between the conditions under which her work was performed and the occupational disease; that her back condition can be seen to have followed as a natural incident of her work; and that it can be fairly traced to the employment as the proximate cause. To hold otherwise would operate to defeat certain valid claims merely because there was no ascertainable single, isolated, fortuitous event which caused the injury. In other words, an employee who is injured gradually by reason of the duties of employment and eventually becomes disabled is no less the recipient of a personal injury than one who suffers a single disabling trauma.

For the reasons stated herein we find and hold that the workmen's compensation appeal board was clearly wrong. Its ruling is therefore reversed and the case is remanded with directions that the claim be held compensable.

*Reversed and remanded with directions.*