**STATE OF WEST VIRGINIA**

**FILED**

**September 27, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ROBERT A. WILSON,**
**Claimant Below, Petitioner**

**vs.)   No. 20-0387** (BOR Appeal No. 2054862)
                      (Claim No. 2018019930)

**SAFELITE GROUP, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Robert A. Wilson, by counsel Patrick K. Maroney, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Safelite Group, Inc. ("Safelite"), by counsel Jordan E. Martin and Jeffrey B. Brannon, filed a timely response.

The issue on appeal is compensability of the claim. The claims administrator rejected Mr. Wilson's claim for benefits on May 12, 2018. On November 6, 2019, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's decision. This appeal arises from the Board of Review's Order dated May 21, 2020, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]

 . . . .

1

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record. . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r*, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. W. Va. Off. Ins. Comm'r*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

On October 2, 2017, Mr. Wilson, a technician/installer, was treated by Malcolm Chaney, M.D. for a left shoulder injury.[1] According to Dr. Chaney's treatment notes, he participated in physical therapy the previous day, and the physical therapist advised that he remain off of work through November 13, 2017. Dr. Chaney examined his left shoulder and diagnosed left shoulder impingement syndrome. A work excuse was provided for a period from October 17, 2017, through November 12, 2017.

Mr. Wilson treated with David Ede, M.D., an orthopedist, on November 2, 2017 for his left shoulder injury. Dr. Ede noted that he had been experiencing left shoulder pain for the past five weeks after lifting various windshields. Mr. Wilson explained that he woke up with pain in the posterior aspect of his left shoulder, and he decided to seek medical treatment after four days of worsening symptoms. Although Dr. Chaney, his treating physician, prescribed physical therapy, Dr. Ede stated that the therapy did not reduce the left shoulder symptoms. Dr. Ede diagnosed left shoulder scapula bursitis and injected Mr. Wilson's left shoulder with Kenalog. Following treatment with Dr. Ede, Mr. Wilson was discharged from physical therapy on November 13, 2017. The physical therapist at Advanced Physical Therapy indicated that he was "being discharged from [physical therapy] by his orthopedist, although the [patient's]goals have not yet been met."

On December 19, 2017, Mr. Wilson underwent an MRI at Charleston Area Medical Center. The reason for the exam was due to pain in the left shoulder. Although he did not have a comparable MRI in the past, the MRI did not reveal evidence of a rotator cuff tear. Dr. Ede performed exploratory arthroscopic surgery on Mr. Wilson's left shoulder on January 31, 2018.

---

[1] On December 3, 2018, Dr. Chaney submitted an amended treatment note. Originally, Dr. Chaney reported that Mr. Wilson injured his left shoulder on September 30, 2018, and that the left shoulder was the subject of a prior tennis injury. The amended note states that Mr. Wilson's left shoulder was treated on October 2, 2017, and that he had a prior right shoulder injury.

The pre-operative diagnosis was occult left shoulder pain, and the post-operative diagnosis was a SLAP tear of the left shoulder.

Mr. Wilson filed an application for an alleged occupational left shoulder injury on February 15, 2018. The documented date of injury was October 2, 2017. The application stated that the injury occurred due to repetitive lifting, reaching, and grabbing while installing windshields and other auto glass while working for Safelite. Dr. Ede completed the physician's section of the Employees' and Physicians' Report of Occupational Injury or Disease application. Dr. Ede stated that Mr. Wilson's condition is a direct result of an occupational injury, and it did not aggravate any prior injury or disease.

Mr. Wilson followed-up with Dr. Ede on February 20, 2018, and March 29, 2018. He reported consistent left shoulder pain but good passive range of motion. During the March 29, 2018, visit, he reported significantly reduced symptoms. The pain he had prior to the surgery was gone. He also showed 50% improvement in his range of motion. Dr. Ede recommended continued rehabilitation, and Mr. Wilson was released to return to work with restrictions of light duty, with no lifting, pushing, or pulling with his left arm until his next visit.

On May 12, 2018, the claims administrator denied Mr. Wilson's application for workers' compensation benefits. The claims administrator alleged that he did not timely report the injury to his employer; that he did not sustain a definite, isolated and fortuitous injury; and that he provided no medical evidence that his shoulder injury was causally related to an occupational injury. Mr. Wilson protested the claims administrator's decision.

Mr. Wilson was deposed on November 27, 2018. He testified that at the time of the alleged injury, he was a mobile automobile glass technician who repaired and replaced windows for automobiles and trucks in the field. He explained that each morning he would unload scrap from the previous day at Safelite's worksite and then load new glass in a van for work that day. He further stated that moving windshields was awkward because it required him to use his upper body, back, and shoulders. He worked five to six days per week; and he would uninstall/install five to six windshields each day. Mr. Wilson described his work activities on September 30, 2017, and testified that he noticed an ache in his shoulder while finishing his last assignment for the day. His left shoulder symptoms increased as the day progressed. He described it as a stabbing pain. He first sought left shoulder treatment on October 2, 2017, with Dr. Chaney, who referred him to physical therapy, which did not improve the symptoms.

Mr. Wilson explained that he did not immediately inform the employer of the injury because he "was really scared to file for workers' comp because I had kind of heard bad things about it, that it will follow you and it's a mess." Mr. Wilson described his treatment with Dr. Ede, which included physical therapy, a cortisone injection, and exploratory surgery. He saw Dr. Ede three to four times, and he did not work due to left shoulder symptoms from October 2, 2017, through December 22, 2017. He also did not work from January 31, 2018, through March 18, 2018. He was able to work light duty from December 22, 2017, through the date of surgery on January 31, 2018.

Upon cross-examination, Mr. Wilson admitted that he did not recall a specific injury to his left shoulder; instead, he was alleging an injury due to repetitive motion. Although he testified of a prior right shoulder injury from playing tennis, he denied any prior left shoulder injury or symptoms from work. According to Mr. Wilson's testimony, he previously worked as a deck hand on a river boat, and he subsequently returned to working as a deck hand after he recovered from the alleged September 30, 2017, injury.

A second deposition was taken on June 27, 2019. In this deposition, Mr. Wilson explained the reason for Dr. Chaney's addendum report was because he erroneously documented a prior left shoulder injury from playing tennis. Dr. Chaney's office corrected the error and noted that the prior injury was to the right shoulder. Mr. Wilson testified that he still has lingering symptoms from the alleged compensable injury.

David Soulsby, M.D., an orthopedist, reviewed Mr. Wilson's medical records and issued a record review report dated July 6, 2019. Although Mr. Wilson did not identify a specific injury to the left shoulder, Dr. Soulsby noted specific etiologies recognized currently for SLAP tears. He wrote that SLAP tears are not known to be caused by repetitive lifting. Usually, they are caused by traumatic events and/or "attrition and degeneration." Dr. Soulsby concluded:

"The claimant did not describe any event which occurred as a result of his work conditions which would meet the usual traumatic qualifications to cause a SLAP tear. He did sustain an injury while playing tennis, which is an overhead sport. Athletes participating in overhead sports activities are known to be at increased risk for labral tears."

Dr. Soulsby could not determine to a reasonable degree of medical probability that any event occurred while Mr. Wilson was at work which would have caused an injury to his shoulder labrum.

By decision dated November 6, 2019, the Office of Judges affirmed the May 12, 2018, Order rejecting the claim. The Office of Judges concluded that Mr. Wilson did not prove by a preponderance of the evidence that he sustained an injury in the course of and as a result of his employment. It was noted that Mr. Wilson submitted no evidence describing when he informed Safelite of a work-related left shoulder injury. The Office of Judges reasoned that the only evidence indicating when the employer was informed of an alleged compensable injury is the February 15, 2018, Report of Occupational Injury, which was filed four and a half months after September 30, 2017.

In analyzing the evidence in Mr. Wilson's case, the Office of Judges relied upon this Court's decision in *SWVA, Inc. v. McKenzie*, No. 13-0391 (W. Va. Supreme Court, June 27, 2014) (memorandum decision), which upheld a finding of compensability for a claimant who alleged a single injury while performing repetitive work on a single day and without the claimant's recollection of a definite, isolated and fortuitous event/injury. Based upon the Court's decision in *McKenzie*, the Office of Judges found that an injury due to short-term repetitive work with no allegation of a definite, isolated and fortuitous event can be compensable. However, it

was noted that the *McKenzie* decision emphasizes quick notification of the employer, accompanied with contemporaneous medical documentation describing a mechanism of injury. Mr. Wilson was unable to meet this standard, and the claims administrator's Order dated May 12, 2018, was affirmed. The Board of Review issued an Order dated May 21, 2020, adopting the findings of fact and conclusions of law of the Office of Judges and affirmed the decision.

After review, we agree with the decision of the Office of Judges, as affirmed by the Board of Review. Mr. Wilson complains of an alleged injury after repeatedly performing an activity, but he is unable to identify an isolated, fortuitous event. When he finally reported the alleged incident, nearly five months after he started experiencing symptoms, he did not describe a specific event that caused his injury. Instead, he simply noted that he believed his injury was in relation to repetitive lifting, reaching, and gripping while installing windshields. Although Mr. Wilson has been diagnosed with left shoulder impingement syndrome, scapular bursitis, tendonitis, and SLAP tear, none of his medical providers describe how or why his shoulder injury is causally related to his employment. The evidence supports the Board of Review's decision that Mr. Wilson did not meet his burden of showing that he sustained a compensable injury. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: September 27, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison


**DISSENTING:**

Justice William R. Wooton

Wooton, Justice, dissenting:

I dissent to the majority's disregard of our long-standing jurisprudence on repetitive use injuries and reliance on dicta from an unpublished memorandum decision to deny the compensability of petitioner's left shoulder injury. The majority's denial of compensability because petitioner is "unable to identify an isolated, fortuitous event" is contrary to well-established law holding that repetitive use injuries—which by their nature are antithetical to a "single, isolated" event—are nonetheless compensable:

> A[n] [] injury sustained by a covered employee, in the
> course of and resulting from his employment, *which developed*

*over a period of time and did not occur as a result of a single, isolated trauma, is a personal injury* within the meaning of W.Va. Code, 1931, 23-4-1, as amended.

An employee who sustains an injury which occurred as a result of repeated performances of a specific job duty, upon proof that such injury took place in the course of and resulting from his employment, has sustained an occupational disease, which, under the provisions of W. Va. Code, 1931, 23-4-1, as amended, constitutes a personal injury.

An employee who is injured gradually by reason of the duties of employment and eventually becomes disabled is, under our workmen's compensation law, *no less the recipient of a personal injury than one who suffered a single disabling trauma.*

Syl. Pts. 1, 2, and 3, *Lilly v. State Workmen's Comp. Com'r*, 159 W. Va. 613, 225 S.E.2d 214 (1976) (emphasis added).

Petitioner testified, and his treating physician confirmed, that his left shoulder became painful as the result of repetitive lifting of heavy, awkward windshields in the course of his employment; after arthroscopic surgery, his treating orthopedist diagnosed him with a "SLAP" tear in his left shoulder.[2] For purposes of petitioner's workers' compensation claim, a physician records reviewer stated that SLAP tears "usually are caused by traumatic events" and that petitioner "did not describe any event" which would support a conclusion that the SLAP tear was work-related. The claims administrator accordingly denied the claim.

The Office of Judges ("OOJ"), however, rested its affirmance of the claim denial on an unpublished memorandum decision wherein the Court *upheld* the employee's claim that he had established a repetitive use injury, acknowledging that an employee "who is injured gradually . . . is no less the recipient of a personal injury than one who suffers a single isolated event." *SWVA, Inc. v. McKenzie*, No. 13-0391, 2014 WL 2922794, at *1 (W. Va., June 27, 2014). However, rather than adhering to this correct statement of the law, the OOJ distinguished the instant case from *McKenzie* on the basis of how quickly the employee reported the work injury and the presence of "contemporaneous medical documentation describing a mechanism of injury," finding that petitioner did not meet this so-called "standard." Even assuming these matters are relevant rather than incidental dicta in *McKenzie*, petitioner described intractable pain on September 30, 2017 for which he sought treatment two days later on October 2, 2017, describing left shoulder pain. He reported his occupational injury on February 15, 2018—well within the statutory six-month time frame. *See* W. Va. Code § 23-4-15 (2010). Petitioner

---

[2] SLAP is an acronym for a "Superior Labrum, Anterior to Posterior tear[.]" The Cleveland Clinic notes that "[c]hronic injury is the most common cause of SLAP tears." *See* https://my.clevelandclinic.org/health/diseases/21717-slap-tear (last visited Sept. 22, 2021).

explained his hesitancy to report the injury as being apprehensive about the stigma from workers' compensation claims, which explanation was unrebutted by the employer.

Nonetheless, the majority adopts the OOJ's reasoning, as affirmed by the Board of Review, and focuses inexplicably on petitioner's failure to describe "a specific event that caused his injury." The majority goes a step further and incorrectly states that "none" of petitioner's medical providers describe how or why the SLAP tear is related to his employment. However, Dr. Ede plainly indicated in the record that petitioner's "superior glenoid labrum tear" was "occupational injury" and noted petitioner's history of repetitive lifting "without history of injury[.]"[3]

As is well-known, compensability has historically and regularly been afforded to repetitive use or exposure injuries such as carpal tunnel syndrome or occupational pneumoconiosis. Therefore, the notion that a compensable workers' compensation claim may only result from a "single, fortuitous" injury has long-ago been dispelled by this Court. As our system and our caselaw reflects, rather than culminating in a sudden, singular incident, repetitive use injuries commonly become intolerably symptomatic, causing an individual to seek treatment which typically reveals the etiology of the complaints. That is precisely what occurred in this case; the majority fails to articulate why this case should be treated any differently than the countless repetitive use injuries held compensable every day. Because petitioner clearly met his burden for establishing compensability, I respectfully dissent.[4]

---

[3] Notably, neither the OOJ nor Board of Review based their denial of the claim on Dr. Soulsby's ostensibly competing opinion on causation. Dr. Soulsby's opinion is nowhere referenced in the OOJ's discussion or ruling, but merely referenced in its findings of fact. Moreover, Dr. Soulsby's report is not included in the appendix record.

[4] At a minimum, however, even if the majority does not agree with this assessment of the law and the undisputed evidence, the OOJ and Board of Review's exclusive reliance on dicta from a single paragraph of analysis in an unpublished memorandum decision certainly warrants placement on the argument docket to address this important issue of law affecting many West Virginia employees.